The PEOPLE of the State of
Colorado, Complainant,

v.

John Delos ZIMMERMANN,
Attorney–Respondent.

No. 96SA17.

Supreme Court of Colorado,
En Banc.

May 20, 1996.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

Michael D. Gross, Colorado Springs, for Attorney–Respondent.

PER CURIAM.

A hearing panel of the supreme court grievance committee approved the findings of a hearing board, but modified the board's recommendation that the respondent be suspended for six months to a recommendation of suspension for one year and one day. Both the respondent and the assistant disciplinary counsel have excepted to the panel's recommendation. We accept the hearing panel's recommendation and order that the respondent be suspended from the practice of law for one year and one day.

## I.

The respondent was admitted to practice law in Colorado in 1971. The respondent stipulated to and admitted the factual allegations of the formal complaint, which contained five counts. Based on the respondent's stipulations, admissions, and testimony at the hearing, and the testimony of the complainant's witness, together with the exhibits introduced into evidence, the hearing board found that the following was established by clear and convincing evidence.

## A.

### *The Kelley Sue Allen Matter*

Around August 27, 1992, Kelley Sue Allen retained the respondent to represent her in a dissolution of marriage proceeding. Allen agreed to pay the respondent a $5000 flat fee for him to handle the entire dissolution, with $2,500 to be paid in advance. The fee agreement, which was oral and was never reduced to writing, also provided that Allen would pay an additional $5,000 if child custody became an issue.

Allen paid the respondent the initial $2,500 on or about September 27, 1992, with a money order. The respondent cashed the money order on September 27, but the amount was never deposited in the respondent's attorney trust account.

Allen filed a request for investigation against the respondent on November 13, 1992, and requested an itemization of attorney fees spent. On December 15, 1992, Allen's new lawyer sent a letter to the respondent asking for the respondent's time slips to substantiate the fees the respondent charged Allen. The respondent provided Allen with an accounting of his charges on January 25,

1993, but he did not produce his time slips because he had destroyed them.

The hearing board concluded that the respondent's failure to deposit the unearned advance fee into his trust account violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). *Cf. People v. Varallo*, 913 P.2d 1, 11 (Colo.1996) (depositing unearned retainers into business operating account, and spending an unearned client retainer, violated DR 9–102(A), which required lawyers to deposit client funds in a separate account). In addition, on and after January 1, 1993, the effective date of the Rules of Professional Conduct, the respondent violated R.P.C. 1.15(a) by failing to maintain appropriate records of Allen's account funds.

### The Matt Martin Matter

Matt Martin was a friend of the respondent and had engaged the respondent's services in a products liability matter. On September 8, 1992, the respondent mailed Martin a $6,000 check, representing the entire settlement in Martin's case, and consisting of Martin's share as well as the respondent's attorney fees and costs. The respondent asked that the check be endorsed by Martin and his wife and returned to the respondent, and Martin complied.

The respondent deposited $7,710 into his trust account on September 16, 1992, including the $6,000 Martin settlement check. The respondent was entitled to $1,000 in attorney fees and $48 in costs from the settlement check. The balance of $4,952 belonged to Martin. On the same day, the respondent transferred $7,710, including the Martin settlement proceeds, from the respondent's trust account to his personal tax reserve account. Martin neither knew of nor consented to the respondent's personal use of Martin's funds.

On October 22, 1992, the respondent wrote Martin a $4,952 check drawn on his trust account. There were insufficient funds in the trust account to cover the check, however. Between September 17 and October 23, 1992, the respondent's trust account balance was consistently below $4,500. The respon-

dent then made additional deposits from unknown sources into the trust account, and the Martin check was successfully presented for payment on November 4, 1992.

The foregoing conduct violated DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

### B.

Based on the respondent's admissions, the hearing board determined that the factual allegations of Count II of the complaint had been established:

a. On March 25, 1992, the respondent wrote a trust account check in the amount of $115 for an office expense. On March 27, 1992, the respondent's trust account was overdrawn by $93.63. On March 30, 1992, the respondent deposited into his trust account $100 in client funds. Without the knowledge or authorization of the affected client, funds from this deposit were used to cover the office expense check, which cleared the respondent's trust account on March 30, 1992.

b. Following the payment of the check referenced in paragraph (a) above, on March 30, 1992, the respondent's trust account became overdrawn by $109.63. On March 31, 1992, the respondent deposited $1,400 in client funds. On March 31, 1992, these funds were used to pay the trust account's deficit of $109.63 and to cover a check written by the respondent for a personal expense in the amount of $20.00. This occurred without the knowledge or authorization of the affected clients.

c. On March 30, 1992, the respondent wrote a check from his trust account in the amount of $1,518.11 for an office expense. At the time the respondent wrote the check, there was a negative balance in the trust account. On March 31 and April 1, 1992, the respondent deposited other funds into his trust account, including $1,145 in client funds. Without the knowledge or consent of the affected client, a portion of this deposit was used to cover the office expense check.

d. On April 9, 1992, the respondent deposited $3,500 into his law office trust

account. The deposit referred to a client named Adcock. By July 6, 1992, the respondent's trust account was overdrawn by $73.45. The overdraft was subsequently covered by the deposit of other funds. On November 20, 1992, the respondent wrote a check in the amount of $300 on behalf of Adcock. The $300 check was paid from other clients' funds in the respondent's trust account without the knowledge or authorization of those clients.

e. On April 24, 1992, the respondent wrote a trust account check in the amount of $5,000 for a personal expense; at that time the balance in the trust account was $914.21. On April 27, 1992, the respondent deposited $15,500 in client funds. The $5,000 check was paid on April 27, 1992, from a portion of the $15,500 deposit, without the knowledge or authorization of the client.

f. On June 5, 1992, the respondent deposited a total of $1,000 in client funds into his trust account. Of that amount, $200 was deposited on behalf of the respondent's client, Sharbono. By July 6, 1992, the respondent's trust account was overdrawn by $73.45. Subsequently, the balance in the trust account was replenished with other client funds. On November 3, 1992, the respondent wrote a check in the amount of $80 as a filing fee for Sharbono. The filing fee check was paid by other clients' funds in the respondent's trust account without the knowledge or authorization of those clients.

g. Pursuant to the respondent's ledger sheets, on March 31, 1992, the respondent received a retainer of $1,000 from James Nelson. By July 2, 1992, the respondent's trust account was overdrawn. On July 7, 1992, the respondent deposited $46,000 in client funds into his trust account. On July 14, 1992, the respondent wrote a check to his client, James Nelson, in the amount of $488 as a refund of an unused retainer. Without the knowledge or authorization of the affected client, Mr. Nelson's refund check and a deficit in the respondent's trust account in the amount of $73.45 were paid from a portion of the $46,000 deposit.

h. On January 25, 1993, the respondent wrote a trust account check in the amount of $600 to his client, Dennis Glover. The respondent's ledger sheets show that Mr. Glover made payments to the respondent on January 14, June 29, and November 16, 1992, in the amounts of $600, $400 and $100, respectively. These funds were deposited into the respondent's law office operating account. The $600 trust account check written to Glover was paid from other clients' funds in the respondent's trust account without the knowledge or authorization of the affected clients.

i. The respondent's ledger sheets show that he received $1,000 from William Gushurst on December 24, 1992, which was deposited into his law office operating account. On February 9, 1994, the respondent wrote a trust account check in the amount of $571 to his client, Gushurst; the check was designated as a "refund of unearned fees." The refund check was paid from other clients' funds from the respondent's trust account without the knowledge or authorization of the affected clients.

j. On April 28, 1994, the respondent wrote a check designated as settlement funds in the amount of $4,612.76 to his client, Jennifer Rose. The balance in the trust account on April 29, 1994, was $4,593.85. There was a negative balance in the trust account on May 2, 1994, after the check to Ms. Rose was paid. Without the knowledge or authorization of the affected clients, the overdraft was covered by a portion of other client funds that were deposited on May 5, 1994.

k. On October 8, 1994, the respondent's ledger sheets indicate that he received a $1,000 retainer from his client, Bonger. On October 27, 1994, the respondent wrote a check in the Bonger matter in the amount of $1,000 to the Jefferson County Clerk. On January 16, 1995, the respondent issued a check in the amount of $576.16 to Bonger as a refund of unearned fees. At the time the respondent wrote the January 16, 1995, refund check to Bonger, he had fully expended Bonger's retainer. The respondent's check to Bonger was paid on January 23, 1995, from a portion of other clients' funds remaining in the respondent's trust account. This was

done without the knowledge or authorization of the affected clients.

l. On April 20, 1995, the respondent wrote a check to his client, Armenta, in the amount of $700; the check was designated as a "refund of unearned fees." There was no corresponding deposit for this client in the respondent's trust account for the year 1995. This check was paid from other clients' funds in the respondent's trust account without the knowledge or authorization of the affected clients.

From January 1992 through April 1995, therefore, the respondent consistently mismanaged his trust account, commingled funds that should have been deposited in either his trust *or* his operating account, improperly used clients' funds to pay for personal, office and client expenses, and made refunds of unused advance attorney fees from unrelated client funds without the knowledge or authorization of the clients affected. The hearing board found that this conduct, which occurred both before and after the effective date of the Rules of Professional Conduct, violated DR 1–102(A)(6) and R.P.C. 8.4(h) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law); DR 9–102(A) (all client funds shall be deposited in one or more identifiable interest-bearing depository accounts); R.P.C. 1.15(a) (a lawyer shall not commingle client and personal funds); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); and R.P.C. 8.4(g) (conduct which violates accepted standards of legal ethics).

## C.

The respondent used trust funds to pay his personal expenses unrelated to client affairs from January 1992 through March 1994. Between January 1992 and November 1993, the respondent wrote more than 150 checks for personal expenses on his trust account. In addition, over a period of at least five years the respondent authorized the automatic withdrawal of his health club dues from the trust account. Moreover, the respondent frequently made withdrawals from his trust account for pocket money through automated teller machines (ATMs). He also commingled earned attorney fees with unearned fees in the trust account.

The above conduct violated DR 1–102(A)(4) and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); DR 9–102(A)(2) (withdrawal of unearned fees); and R.P.C. 1.15(a) (commingling of client and personal funds).

## D.

In November 1993, the respondent met with representatives of the Office of Disciplinary Counsel and was advised to stop making ATM withdrawals, and to stop the automatic payment of the health club dues, from his trust account. Although the respondent left a message with his personal banker to stop the automatic payment of his health club dues, he did not look at any of the monthly bank statements to determine if his message had been effective. In fact, because he had not followed the proper procedure to stop the automatic withdrawals, they continued until April 1995. The respondent only learned that the withdrawals were continuing when he was so informed by an attorney at the Office of Disciplinary Counsel who *was* reviewing the respondent's bank statements.

The respondent also sent a letter on November 30, 1993, to an inquiry panel of the grievance committee regarding the request for investigation filed by Kelley Sue Allen. The respondent stated in his letter that, "[a]lthough there was mismanagement of some trust funds, due to poor business practices, that situation has been corrected by my office working with my professional staff and my CPA." Notwithstanding this statement to the grievance committee, however, in March 1994 the respondent deposited personal rental income proceeds into his trust account and paid an office expense with a trust account check.

As the board concluded, the foregoing conduct violated R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); and R.P.C. 1.15(a) (a lawyer shall not commingle client and personal funds).

## E.

With respect to the final count, Count V, the hearing board found as follows:

17. From January 1992 through December 1993, the respondent engaged in

twenty-two (22) return check and overdraft transactions in his law office operating account. All of the checks appear to have been paid upon the second presentment.

18. From January 1992 through December 1993, the respondent engaged in six (6) return check and overdraft transactions in his law office trust account. All of the checks appear to have been paid on the second presentment.

19. On April 28, 1994, and May 5, 1994, there was a negative balance in the respondent's trust account.

The respondent thereby violated DR 1–102(A)(4) and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); DR 1–102(A)(6) and R.P.C. 8.4(h) (conduct adversely reflecting on fitness to practice); and R.P.C. 8.4(g) (conduct violating accepted standards of legal ethics).

## II.

The hearing board recommended that the respondent be suspended for six months, be required to petition for reinstatement pursuant to C.R.C.P. 241.22(b)-(d), and "be required to demonstrate that he has developed a system of law office management and monitoring which minimizes the possibility of the recurrence of the type of conduct which resulted in these proceedings."

The hearing panel approved the board's findings, but recommended that the length of the suspension be modified to one year and one day, "given the seriousness of the respondent's misconduct, the potential for serious harm, [and] the respondent's failure to recognize the seriousness of his misconduct. . . ."

The respondent has excepted to the panel's recommendation of discipline as well as to the board's recommendation that he undergo reinstatement proceedings. Although the assistant disciplinary counsel urged the hearing board to recommend that the respondent be suspended for one year and one day, he now contends that disbarment is appropriate.

The single most important factor in determining the appropriate level of discipline in this case is whether the respondent's misappropriation of client funds was knowing, in which case disbarment is the presumed sanction, *People v. Varallo*, 913 P.2d 1, 12 (Colo. 1996), or whether it was reckless, or merely negligent, suggesting that a period of suspension is adequate. *People v. Dickinson*, 903 P.2d 1132, 1138 (Colo.1995) (misappropriation of client funds must be knowing, rather than negligent, for disbarment to be presumed sanction). The hearing board specifically found that the respondent's mental state during the mismanagement of his trust and operating accounts was not one of simple negligence, but was reckless.[1]

The board also properly concluded that a mental state of recklessness will sustain a finding that the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, contrary to DR 1–102(A)(4) and R.P.C. 8.4(c). *People v. Rader*, 822 P.2d 950, 953 (Colo.1992) (element of scienter necessary for violation of DR 1–102(A)(4) established when attorney deliberately closes his eyes to facts that he had a duty to see, or has recklessly stated as facts things of which he was ignorant). In this case, the respondent claimed that he had never studied the disciplinary rules or read disciplinary summaries, and never took any steps to clarify his fiduciary duty with respect to client funds, even after the Office of Disciplinary Counsel initiated its investigation of the respondent and warned him of his deficiencies. The board also concluded that the respondent "continues to demonstrate an absolute lack of insight or understanding of the requirement that client money and his operating account must be managed appropriately."

Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA

1. The stipulations, admissions and other evidence presented at the hearing with respect to the respondent's extensive commingling and misuse of client funds would certainly have supported a finding that the respondent's misappropriations were knowing rather than merely reckless. *People v. Dickinson*, 903 P.2d 1132, 1138 (Colo.1995). The board's determination that the respondent's mental state was one of recklessness nevertheless finds support in the record and we will not overturn it. *People v. Galindo*, 884 P.2d 1109, 1112 (Colo.1994) (board's conclusion that conversion was negligent rather than knowing was supported by the record and would not be overturned).

*Standards* ), in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows *or should know* that he is dealing improperly with client property and causes injury or potential injury to a client." ABA *Standards* 4.12 (emphasis added). The relevant inquiry therefore is the length of the suspension and whether the respondent should be required to petition for reinstatement.[2]

The hearing board found the existence of the following aggravating factors: the respondent has a prior disciplinary record in the form of two admonitions for unrelated misconduct, *id.* at 9.22(a); a pattern of misconduct, *id.* at 9.22(c); multiple offenses, *id.* at 9.22(d); and substantial experience in the practice of law, *id.* at 9.22(i). In mitigation, the respondent exhibited a cooperative attitude toward the proceedings, *id.* at 9.32(e); and has expressed remorse for the misconduct, *id.* at 9.32(*l* ).

The duration and extent of the respondent's misuse of client funds is very troubling, as is the respondent's claim of ignorance regarding his fiduciary duties with regard to client funds. We agree with the hearing board and the hearing panel that reinstatement proceedings are essential to ensure that the public will be adequately protected in the future.

In *People v. Davis,* 893 P.2d 775 (Colo. 1995), we suspended the lawyer for 180 days for commingling client and personal funds in a trust account, and for writing forty-five insufficient funds checks. The parties entered into a stipulation, agreement, and conditional admission of misconduct in *Davis,* 893 P.2d at 775. The conditional admission contained no explicit allegations that the respondent actually misappropriated or misused client funds, as in the present case. We conclude, therefore, that the respondent's misconduct is so serious that suspension for one year and one day, as the panel recommended, is warranted.

### III.

Accordingly, it is hereby ordered that John Delos Zimmermann be suspended from the practice of law for one year and one day, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is also ordered that the respondent pay the costs of this proceeding in the amount of $809.17 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202. Zimmermann must undergo reinstatement proceedings as set forth in C.R.C.P. 241.22(b)-(d) prior to reinstatement, and as a special condition of reinstatement, as recommended by the hearing board, the respondent is required to demonstrate that he has developed a system of law office management and monitoring which minimizes the possibility of the recurrence of the type of conduct which resulted in these proceedings.

KIRSHBAUM, J., does not participate.

---

**2.** The lawyer in *People v. Sims,* 913 P.2d 526 (Colo.1996), was disbarred for recklessly disbursing funds held in his attorney trust account. The conduct of the lawyer in *Sims* was more aggravated than the respondent's conduct in this case, however, and the actual damage caused in *Sims* was so great that disbarment was the only reasonable result. *Id.* at 531.