**The PEOPLE of the State of Colorado, Complainant,**

v.

**Richard A. SCHAEFER, Attorney–Respondent.**

**No. 96SA323.**

Supreme Court of Colorado, En Banc.

May 19, 1997.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Deputy Disciplinary Counsel, Denver, for Complainant.

Charles E. Mortimer, Jr., Lakewood, for Attorney–Respondent.

PER CURIAM.

A hearing panel of the supreme court grievance committee generally approved the findings of a hearing board in this lawyer discipline case, but modified the board's rec-

ommendation that the respondent be suspended from the practice of law for one year and one day to a period of two years. Although both the deputy disciplinary counsel and the respondent initially excepted to the panel's action, they have now withdrawn their exceptions. We accept the hearing panel's recommendation.

## I.

The respondent was licensed to practice law in this state in 1969. He was immediately suspended from the practice of law pursuant to C.R.C.P. 241.8 on September 19, 1996, pending further order of this court. Based on the evidence presented, the hearing board found that the following had been established by clear and convincing evidence.

Ronald Naasko hired the respondent in June 1990 to represent him in the sale of real property located in Park County, Colorado, to Tony and Peggy Helms. Naasko's title company issued a commitment containing an exception to coverage for lack of legal access of record to the property. There was a mortgage on the property held by Burke Venture I. In July 1990 the balance due under the mortgage was slightly more than $10,000. The respondent sent the closing documents to the Helmses in July 1990. Their lawyer advised them not to close on the purchase of the property until the exception to the title commitment due to lack of access was resolved. Nevertheless, the Helmses proceeded with the closing on August 10, 1990.

In the meantime, the respondent discovered that the previous owner of the property, Burke Venture I, had obtained a title policy which did not contain the exclusion for access. He therefore asked that title company on August 6 to issue a new commitment for Naasko.

The hearing board found that the closing on August 10 took place "in escrow." The respondent did not prepare any escrow agreement, however, and the terms of any oral agreement are uncertain. In any event, the respondent obtained executed copies of the closing documents and he received funds from the Helmses in the approximate amount of $9,400. The respondent deposited these funds, as he had previously done with a $500 earnest money deposit, into his operating account which contained the respondent's own funds. The respondent did not have a trust account. However, the money to pay off the Burke mortgage should have been held in a trust account. The balance in the respondent's operating account on over 160 days between August 10, 1990 and May 1993, when the final disbursement to pay the mortgage was made, fell below the amount that the respondent was supposed to hold in trust for Naasko. The respondent therefore used Naasko's funds for things other than the mortgage without seeking or receiving his client's permission to do so. The hearing board found that by failing to keep his client's funds separate from his other funds, the respondent violated DR 9–102(A).

Shortly after the closing, Naasko moved to Oregon. He wanted the respondent to pay off the balance of the Burke mortgage as soon as possible. The respondent explained to Naasko, and Naasko ultimately agreed, that it would be desirable to refrain from recording the warranty deed and the carry-back mortgage from the Helmses to Naasko, and also to defer making the final payment on the Burke mortgage, in order to pressure the title company to write a clean title insurance commitment. So the respondent did not pay off the Burke mortgage immediately, but continued to make some monthly payments on the mortgage. On April 12, 1991, however, Burke sent a notice of acceleration because the respondent had made the December, January, and February payments late, and had not paid anything for March and April 1991.

Naasko was extremely upset and angry, and the respondent made up the payments and the demand for acceleration was withdrawn. The respondent made the next three mortgage payments of $275 on time and then paid $2,000 in August and the same amount in September 1991.

In September 1991, the title company did issue a new title insurance commitment without the exception for legal access. The board concluded that although the respondent might have obtained the commitment

more expeditiously, it had not been proven by clear and convincing evidence that he thereby neglected his legal duty to Naasko.

In any event, after the title company issued the new commitment the respondent did not pay off the mortgage as his client had instructed him. Thus, in early December 1991, Naasko paid off the outstanding balance on the mortgage himself. Naasko fired the respondent and asked him to return the balance of his funds directly to him. The respondent ignored Naasko's letters and did not refund his client's money at that time.

After making additional unsuccessful demands for the return of his funds, Naasko filed the request for investigation in this case in June 1992. It was not until February 1993, however, that the respondent finally paid Naasko approximately two-thirds of the amount he owed him. The respondent paid the rest in May 1993.

The hearing board did not find by clear and convincing evidence that the respondent's mishandling of his client's funds amounted to an intentional misappropriation of those funds:

> Although the question is a close one, the Hearing Board concludes that the respondent's actions resulted from neglect and inattention to the handling of his operating account. Thus, the Hearing Board concludes that respondent's actions were more akin to a "technical conversion" ... than an intentional misappropriation of Naasko's funds.

See People v. Varallo, 913 P.2d 1, 11 (Colo. 1996) (discussing differences between technical and intentional conversion of client funds).

The hearing board therefore concluded that in addition to the violation of DR 9–102(A) discussed above, the respondent's conduct violated DR 7–101(A)(2) (intentionally failing to carry out a contract of employment entered into with a client); DR 7–101(A)(3) (intentionally prejudicing or damaging the lawyer's client during the course of the professional relationship); and DR 9–102(B)(4) (failing to promptly pay client funds which the client is entitled to receive).

## II.

The hearing board recommended that the respondent be suspended for one year and one day, and that as a condition of reinstatement, the respondent must demonstrate that he has developed a system of law office management and monitoring which minimizes the possibility of recurrence of the type of conduct which resulted in these proceedings. In approving the board's findings, however, the hearing panel modified the recommended period of suspension to two years for the following reasons:

> The panel approved the [hearing board's] findings of fact but a modification of the recommendation of the hearing board, as follows: that the respondent be suspended from the practice of law for two years, because unlike the respondent in People v. Zimmermann, [922 P.2d 325 (Colo.1996)], the respondent failed to maintain a trust account, ignored his client's demands for payment, failed for more than a year to pay money due to his client, and, instead of pleading ignorance or acknowledging the need to maintain a trust account, suggested that because he did good legal work, his failure to properly handle trust funds should be excused....

In reaching its recommendation of suspension for one year and one day, rather than for a longer period, the hearing board relied on our decision in People v. Zimmermann, 922 P.2d 325 (Colo.1996). In Zimmermann, we said:

> The single most important factor in determining the appropriate level of discipline in this case is whether the respondent's misappropriation of client funds was knowing, in which case disbarment is the presumed sanction, People v. Varallo, 913 P.2d 1, 12 (Colo.1996), or whether it was reckless, or merely negligent, suggesting that a period of suspension is adequate. People v. Dickinson, 903 P.2d 1132, 1138 (Colo.1995) (misappropriation of client funds must be knowing, rather than negligent, for disbarment to be presumed sanction).

Zimmermann, 922 P.2d at 329. We explained this distinction as follows:

A "technical conversion," usually warranting suspension rather than disbarment, is a conversion or misappropriation where the complainant either concedes that the misappropriation was negligent, *People v. Dickinson*, 903 P.2d 1132, 1138 (Colo.1995), or it cannot be proven by clear and convincing evidence that the respondent knowingly converted the funds, *People v. Galindo*, 884 P.2d 1109, 1112 (Colo. 1994) (board's conclusion that conversion was negligent rather than knowing was supported by the record and would not be overturned); *People v. Wechsler*, 854 P.2d 217, 220–21 (Colo.1993) (supreme court will not overturn hearing board's conclusion that intentional conversion was not established by clear and convincing evidence unless there is no substantial evidence in the record to support conclusion); *McGrath*, 780 P.2d at 493 ("Indeed, if there were not some lingering doubt about whether the respondent engaged in *knowing* conversion of his client's funds, we would have no hesitation in entering an order of disbarment.")

*People v. Varallo*, 913 P.2d 1, 11 (Colo.1996). The hearing board's determination that the respondent's mishandling of his client's funds was negligent rather than intentional is not clearly erroneous and we will not overturn it.

Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows *or should know* that he is dealing improperly with client property and causes injury or potential injury to a client." ABA *Standards* 4.12 (emphasis added). The question then is the length of the appropriate suspension.

■ The hearing board found that the following aggravating factors were present for purposes of analyzing the proper level of discipline: the respondent has a prior disciplinary record in the form of two admonitions for unrelated misconduct, *see id.* at 9.22(a); the respondent submitted false evidence at the hearing regarding his secretary's responsibility for handling his checking account, *see id.* at 9.22(f); he refused to acknowledge the wrongful nature of his conduct by, among

other things, not even opening a trust account until three and one-half years after the request for investigation was filed and after two previously scheduled hearing dates had been vacated, *see id.* at 9.22(g); the respondent has substantial experience in the practice of law, *see id.* at 9.22(j); and he manifested an indifference to making restitution to his client by failing to return Naasko's funds for almost eighteen months after he was discharged, *see id.* at 9.22(j). The hearing board found no factors in mitigation.

■ After reviewing the record, including the respondent's testimony at the hearing, we agree with the hearing panel that the respondent's arrogant attitude regarding his ethical responsibilities is even more aggravated than exhibited by the lawyer in *Zimmermann*. His supposed explanations of why he delayed returning his client's funds for so long do not ring true. Moreover, the respondent's implication that he is so well off that he is above the fiduciary responsibilities of other lawyers convinces us that a longer suspension than we imposed in *Zimmermann* is appropriate. Accordingly, we accept the hearing panel's recommendation and order that the respondent be suspended for two years.

### III.

It is hereby ordered that Richard A. Schaefer be suspended from the practice of law for two years, effective upon the issuance of this opinion. The respondent is required to demonstrate, as a condition of reinstatement, that he has developed a system of law office management and monitoring which minimizes the possibility of recurrence of the type of conduct which resulted in these proceedings. The respondent is also ordered to pay the costs of this proceeding in the amount of $3,140.09 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202. Schaefer shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)–(d).