**In the Matter of James A. CLELAND, Attorney–Respondent.**

**No. 99SA89.**

Supreme Court of Colorado, En Banc.

May 22, 2000.

John S. Gleason, Attorney Regulation Counsel, James C. Coyle, Assistant Regulation Counsel, Denver, Colorado, Attorneys for Complainant.

No Appearance By or on Behalf of Attorney–Respondent.

PER CURIAM.

The respondent in this attorney regulation case, James A. Cleland, admitted that he knowingly misappropriated funds belonging to his clients. We have consistently held that disbarment is the appropriate sanction for this type of misconduct, unless significant extenuating circumstances are present. No such circumstances exist in this case. Nevertheless, a hearing panel of our former grievance committee[1] accepted the findings and recommendation of a hearing board that Cleland should be suspended for three years, rather than disbarred. The complainant filed exceptions to the findings and recommendation, contending that Cleland should be disbarred. On review, we determine that certain of the board's findings are clearly erroneous, and we disagree with some of its legal conclusions. On the other hand, we agree with the complainant that disbarment is the only appropriate sanction in this case. Accordingly, we reject the panel's and board's recommendations and we order that Cleland be disbarred, effective immediately.

## I.

James A. Cleland was first licensed to practice law in Colorado in 1989.[2] The amended complaint contained six counts. Count I charged Cleland with commingling his personal funds with a client's funds, knowingly mishandling contested funds, and knowingly misappropriating funds belonging to the client. Count II alleged that Cleland

---

1. By order of the supreme court dated June 30, 1998, effective January 1, 1999, the grievance committee was superseded by the reorganization of the attorney regulation system. The same order provided: "All attorney discipline cases in which trial has occurred prior to January 1, 1999 before a Hearing Board ... shall be reviewed by the applicable Hearing Panel at a final meeting to be held in 1999...." Order re Reorganization of the Attorney Regulation System (Colo. June 30, 1998), *reprinted in* 12 C.R.S. at 605 (1999). This case was tried on April 29, 1998,

and was reviewed by the hearing panel on February 20, 1999.

2. In an unrelated attorney regulation matter heard after the hearing panel acted in this case, the presiding disciplinary judge and hearing board suspended Cleland for two years, effective October 18, 1999. *See In re Cleland*, No. GC98B118, slip op. at 14 (Colo. PDJ Sept. 17, 1999).

knowingly misappropriated $5000 of his client's funds to reimburse a third party for an earnest money deposit that Cleland was supposed to have held in trust. Count III of the complaint charged that Cleland consistently mismanaged his trust account from September 1995 to February 1996. Count IV alleged that Cleland unilaterally charged his client interest on past-due attorney's fees, without the client's authorization. In Count V, the complainant asserted that Cleland had failed to file a collection matter for a client; that he failed to keep the client reasonably informed about the status of the matter; and that he misrepresented that he had settled the case when in fact he had not. Finally, Count VI charged Cleland with making misrepresentations to one of the complainant's investigators and a paralegal during the investigation of Count V.[3]

The evidence before the hearing board consisted of the testimony of the complainant's and respondent's witnesses (including Cleland himself), documents, and a stipulation of facts contained in the trial management order the parties submitted. As the facts are sometimes complex, we address each count of the complaint separately, together with the hearing board's findings and conclusions pertaining to that count.

### A. Count I – The Kasnoff Funds

Cleland represented George M. Kasnoff Jr. and his various business entities. In 1994, however, Cleland and Kasnoff had a disagreement over the attorney's fees Kasnoff owed Cleland. One of the business entities involved was Kas–Don Enterprises, Inc., which was owned by Kasnoff and Don Shank. Kasnoff and Shank decided to dissolve Kas–Don in the summer of 1995, Shank agreed to buy out Kasnoff's interest in the real estate the corporation owned. Cleland was to prepare the documents that were necessary to transfer the property and to terminate Kas–Don. This was completed in August 1995 and the corporation was dissolved.

Because he was on his honeymoon in Europe on the closing date, Kasnoff made ar-

rangements for Cleland to deposit the net proceeds from the closing into Cleland's trust account. The parties agreed that once the funds were in the trust account, they would be disbursed for certain business expenses. In addition, Kasnoff authorized Cleland to pay himself $5000 for past attorney's fees. Cleland was to deposit the balance of the funds in Kasnoff's bride's bank account.

On August 16, 1995, Cleland deposited proceeds from the closing in the amount of $16,576.56 into his trust account. With his client's permission, Cleland paid certain business expenses that Kasnoff owed with funds from the trust account. On August 17, 1995, Cleland asked Kasnoff to pay attorney's fees over and above the $5000 that Kasnoff had agreed to pay. Kasnoff did not authorize any additional sums to be taken out. Nevertheless, Cleland paid himself an additional $4581.94 for legal services, including $600 for fees that had not yet been earned. Cleland deposited these unauthorized funds into his operating account and used them for his own purposes. When Kasnoff called from Europe on August 16, Cleland told him that he had deposited the balance of the funds (including the $4581.94 he had paid himself without permission) into Kasnoff's wife's bank account. This was untrue.

The hearing board found that Kasnoff frequently paid the attorney's fees he owed Cleland slowly. Cleland also reasonably believed that Kasnoff was in financial difficulties. The exact amount of attorney's fees that Kasnoff owed was in dispute even at the hearing (although after these disciplinary proceedings were underway, Cleland returned the clearly unearned $600 in fees through his lawyer). The hearing board also found that at the time he paid himself the unauthorized funds, Cleland was under considerable financial and personal pressure, and that he was clinically depressed.

The board concluded that Cleland's conduct violated Colo. RPC 1.15(a) (failing to keep the client's property—in this case, the $4581.94—separate from the lawyer's own

---

**3.** The hearing board found that the charges in Count VI had not been proven by clear and convincing evidence. The complainant did not

except to this finding; we therefore dismiss Count VI and do not discuss it further.

property), and 1.15(c) (failing to hold separate any property that the lawyer and another—in this case, the client—both claim an interest in). The board found, however, that the complainant did not prove by clear and convincing evidence that Cleland violated Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The complainant did not specifically complain about this finding in his opening brief, and we find it unnecessary to address it.

### B. Count II – The Clearly Colorado Matter

On June 19, 1995, about two months before Kas–Don was dissolved, Clearly Colorado, L.L.C. entered into a contract with Kasnoff to purchase the latter's one-half interest in Kas–Don real estate. The contract provided that Clearly Colorado would pay a $5000 earnest money deposit, and that this would be held in Cleland's trust account. After receiving the $5000, Cleland used the trust funds for his own use. This was not authorized.[4] The real estate transaction fell through and Clearly Colorado demanded the return of its $5000 deposit. Because he had already diverted the trust funds, however, the balance in Cleland's trust account on August 3, 1995, was only $66.40. Nevertheless, on August 15, 1995, Cleland wrote a $5000 check drawn on his trust account as a refund to Clearly Colorado. This $5000 was paid from the proceeds of the Kas–Don transaction referred to in Count I above.

The board concluded that Cleland knowingly misappropriated client funds to reimburse Clearly Colorado in violation of Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

### C. Count III – Commingling and Misappropriation

Count II details numerous transactions that Cleland engaged in with respect to client funds and his trust account. For our purposes here, it is sufficient to note that Cleland admitted to commingling his own funds with those belonging to his clients in his trust account and that he knowingly misappropriated client funds without the authorization or knowledge of the clients affected.[5]

In particular, the hearing board found that Cleland: (1) knowingly misappropriated $1376.95 of client funds from his trust account to repay another client; (2) commingled personal funds with client funds in his trust account on numerous occasions between November 1995 and August 1996; and (3) disbursed trust account funds belonging to various clients to other clients, without the authorization or knowledge of the clients affected. The board thus concluded that Cleland's conduct violated Colo. RPC 8.4(c).

### D. Count IV – Kasnoff Interest

Without his client's consent or agreement, Cleland charged interest on Kasnoff's past-due accounts. The board found that this practice violated Colo. RPC 1.5(a) (charging an unreasonable fee), and 8.4(c) (conduct involving dishonesty).

### E. Count V – Robin Caspari

Robin Caspari hired Cleland to prosecute a landlord-tenant dispute, and gave him $91 to file suit against two tenants for past-due rent. The hearing board concluded that Cleland failed to keep Caspari reasonably informed about the status of the matter, in violation of Colo. RPC 1.4(a). In addition, Cleland told the client, falsely, that he had filed an action against one of the tenants, when he had not; that hearings had been set and orders had been entered in the case, when in fact there was no case; and that he had settled the matter with one of the clients for $600 which he then paid to the client. The $600 was actually from Cleland's personal funds. This conduct violated Colo. RPC 1.3 (neglecting a legal matter), and 8.4(c) (engaging in dishonest conduct).

---

4. It is unclear why Cleland was not charged with initially misappropriating this $5000 from his trust account.

5. The board did find that client funds belonging to Donna Nazario were transferred to Cleland's operating account by mistake, and thus did not constitute commingling or misappropriation.

## II.

■ The hearing panel approved the hearing board's recommendation that Cleland be suspended for three years, with conditions. The complainant filed exceptions, claiming that certain of the board's factual and legal conclusions were erroneous, and that the appropriate disciplinary sanction was disbarment. The key to the appropriate discipline is also the most serious misconduct here – the knowing misappropriation of client funds in Counts II and III.

■ As we have said numerous times before, disbarment is the presumed sanction when a lawyer knowingly misappropriates funds belonging to a client or a third person. "When a lawyer knowingly converts client funds, disbarment is 'virtually automatic,' at least in the absence of significant factors in mitigation." *People v. Young,* 864 P.2d 563, 564 (Colo.1993) (knowing misappropriation of clients' funds warrants disbarment even absent prior disciplinary history and despite cooperation and making restitution); *see also In re Thompson,* 991 P.2d 820, 823 (Colo. 1999) (disbarring lawyer who knowingly misappropriated law firm funds); *People v. Varallo,* 913 P.2d 1, 12 (Colo.1996) (disbarring lawyer who knowingly misappropriated client funds); *People v. Ogborn,* 887 P.2d 21, 23 (Colo.1994) (misappropriating client funds warrants disbarment even in absence of prior discipline and presence of personal and emotional problems); *People v. Robbins,* 869 P.2d 517, 518 (Colo.1994) (converting client trust funds warrants disbarment even if funds are restored before clients learn they are missing but not before the conversion is discovered by the lawyer's law firm).

■ Consistent with our approach, the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) provides that, in the absence of mitigating circumstances, "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." *Id.* at 4.11. Neither this standard nor our cases require serious injury before disbarment is appropriate. On the other hand, "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property

and causes injury or potential injury to a client." *Id.* at 4.12.

The hearing board found that the following aggravating and mitigating factors were present. In aggravation, Cleland has prior discipline in the form of a letter of admonition for neglecting a legal matter, *see id.* at 9.22(a); and multiple offenses are present, *see id.* at 9.22(d). The board also determined that there was a pattern of misconduct, *see id.* at 9.22(c), but only with respect to Cleland's "continuing recklessness and gross negligence in management of his trust account from approximately mid–1995 to mid-August 1996."

According to the board, mitigating factors included the absence of a dishonest motive or intention on Cleland's part, *see id.* at 9.32(b); Cleland admitted that he committed some of the misconduct and otherwise cooperated in the proceedings, *see id.* at 9.32(e), Cleland was relatively inexperienced in the practice of law, *see id.* at 9.32(f); and he has expressed remorse, *see id.* at 9.32(*l*). Additional mitigating factors found were the presence of personal financial and emotional problems, *see id.* at 9.32(c); and a timely good faith effort to rectify the consequences of at least part of his misconduct, *see id.* at 9.32(d). The board noted that Cleland was diagnosed with a depressive disorder that impaired his judgment, concentration, and thinking. The conclusion that Cleland tried to rectify some of the consequences of his misconduct stems from the board's belief that he offered to arbitrate the fee dispute with Kasnoff before he was aware that he was under investigation.

While acknowledging our statement in *Varallo,* 913 P.2d at 12, that disbarment is the presumed sanction when knowing misappropriation is shown, the board declined to apply what it deemed such a "bright-line" rule to the facts in this case. In particular, the hearing board cited three cases that we decided after *Varallo* that it believed contradicted a literal reading of the case: *People v. Zimmermann,* 922 P.2d 325 (Colo.1996); *People v. Reynolds,* 933 P.2d 1295 (Colo. 1997); and *People v. Schaefer,* 938 P.2d 147

(Colo.1997). However, these cases did not modify *Varallo*'s "bright-line" rule.[6]

We decided *Zimmermann* three months after *Varallo*. The respondent in *Zimmermann*, John Delos Zimmermann, seriously mismanaged the funds in his trust account. He commingled funds that should have been placed in his trust account with funds that should have been deposited in his operating account; he improperly used clients' funds to pay his personal or business expenses; and refunded unearned attorney's fees to clients from funds advanced by different clients. *See* 922 P.2d at 326–29. We suspended Zimmermann for one year and one day. *See id.* at 330. Zimmermann's misconduct is similar to that charged in Count III of the complaint in this case, with one important exception. That exception serves to distinguish *Zimmermann* from this case, however, in the same way that we distinguished *Zimmermann* from *Varallo*. We stated that:

> The single most important factor in determining the appropriate level of discipline in this case is whether [Zimmermann's] misappropriation of client funds was knowing, *in which case disbarment is the presumed sanction, People v. Varallo,* 913 P.2d 1, 12 (Colo.1996), or whether it was reckless, or merely negligent, suggesting that a period of suspension is adequate. *People v. Dickinson,* 903 P.2d 1132, 1138 (Colo.1995).

*Zimmermann,* 922 P.2d at 329 (emphasis added). However, the hearing board specifically found that Zimmermann's mental state when he was mismanaging his trust account was one of recklessness. *See id.* We noted that although the evidence before the board would have supported a finding that Zimmermann's conduct was knowing, rather than reckless, the board's conclusion found support in the record and we would not overturn it. *See id.* at 329 n. 1. *Zimmermann* therefore stands for the same proposition as *Varallo*—the lawyer's actual mental state is the most significant factor for determining the proper discipline. Because the board found

that Zimmermann's mental state when he mismanaged his trust and operating accounts was reckless, not knowing, *Dickinson* (suspension) governed the result, not *Varallo* (disbarment).

We suspended the respondent in *People v. Reynolds,* 933 P.2d 1295 (Colo.1997), for three years. John Kerz Reynolds engaged in an extensive pattern of "neglect of client matters, misrepresentations to clients, dishonesty, misuse of client funds, and assisting a nonlawyer in the unauthorized practice of law." *Id.* at 1305. He also failed to account for, or return, unearned advance fees he received from various clients. *See id.* at 1296–1301. The case did not involve the knowing misappropriation of client funds, however. Reynolds was not charged with misappropriation, nor did the hearing board in that case make any findings on the issue. *Reynolds* is therefore distinguishable.

Finally, in *People v. Schaefer,* 938 P.2d 147 (Colo.1997), we suspended Richard A. Schaefer for two years. Citing *Zimmermann* and *Varallo,* we concluded that "[t]he hearing board's determination that [Schaefer's] mishandling of his client's funds was negligent rather than intentional is not clearly erroneous and we will not overturn it." *Id.* at 150. *Schaefer* is thus completely consistent with *Varallo*.

The present case cannot be distinguished from *Varallo*. In two separate counts, Cleland admitted, and the hearing board found, that he knowingly misappropriated client funds. The board erred when it did not just accept Cleland's admissions and its own initial findings, and then go on to determine whether the factors in mitigation were weighty enough to justify a sanction less than disbarment. Because there is no evidence in the record that supports the conclusion that Cleland's mental state was merely reckless or negligent, that finding is clearly erroneous, and we reject it.

Having determined that disbarment is the presumed sanction in this case, we must now independently review the record with an eye

---

**6.** The virtue of a bright-line rule like this one is not that it is easy to apply, although it is. Rather, such a rule strives to eliminate the disparate treatment of lawyers who have committed serious misconduct, when the unequal treatment may otherwise be based on invidious and irrelevant factors.

towards the factors in mitigation. The hearing board first found that Cleland did not have a dishonest motive or intention when he committed the misconduct. As the complainant points out, this is directly contrary to the stipulation and a large part of the evidence. The hearing board specifically concluded that Cleland engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in Counts II (knowing misappropriation of client funds), III (knowing misappropriation of client funds), IV (unilaterally charging unauthorized interest), and V (misrepresenting the status of a case and that it had settled), in violation of Colo. RPC 8.4(c). The fact that Cleland may not have had a dishonest motive in every single instance of misconduct does not demonstrate that the mitigating factor exists. We reject this as a mitigating factor.

Next, the board found that Cleland's admissions of misconduct and his cooperative attitude in the proceedings were mitigating factors. *See* ABA *Standards, supra,* at 9.32(e). We agree that these constitute bona fide mitigating circumstances, but we accord them little ultimate weight, given Cleland's failure to appear and participate in this court, and his noncooperation and default in the proceedings before the PDJ for the misconduct (similar to that in this case because it involved mismanagement of trust funds) that earned him a two-year suspension. The reason we consider mitigating factors at all is so we may gauge the level of danger that an attorney poses to the public and, ideally, to arrive at a disciplinary sanction that adequately balances the seriousness of the danger against the gravity of the misconduct. Although Cleland's cooperation before the hearing board warrants some consideration, we are troubled by his later noncooperation, and feel that this does not bode well for Cleland's future as a lawyer.

The board also considered Cleland's relative inexperience in the practice of law as a mitigating factor. It is such a factor; but inexperience does not go far in our view to excuse or to mitigate dishonesty, misrepresentation, or misappropriation. Little experience in the practice of law is necessary to appreciate such actual wrongdoing. On the other hand, Cleland's expressions of remorse are mitigating, as the board found. *See id.* at 9.32(*l* ).

The hearing board also considered that the personal, financial, and emotional problems that Cleland was experiencing were mitigating. *See id.* at 9.32(c). Specifically, the board noted that Cleland had been diagnosed with a depressive disorder that impaired his judgment, concentration, and thinking. However, we deem it worthy of note that, despite the advice of the psychiatrist who testified for him, Cleland had not sought treatment for the disorder. Moreover, we reject the proposition that Cleland's financial difficulties mitigate his misappropriation of client funds in any way. Finally, the board found that by offering to arbitrate the fee dispute with Kasnoff, Cleland made some effort to rectify the consequences of at least part of his misconduct. *See id.* at 9.32(d). Despite the fact that Cleland's clients may not have suffered significant actual damages, as the hearing board found (a point that is debatable given the record in this case), the potential for injury was nevertheless substantial.

Taking all of the above factors into consideration, we conclude that they are not significant enough to call for any result other than disbarment. However, two members of the court disagree and would approve the recommendation to suspend Cleland for three years. Accordingly, we reject the board's and panel's recommendation, and we order that Cleland be disbarred.

### III.

We hereby order that James A. Cleland be disbarred, effective immediately. Should Cleland ever seek readmission to practice law pursuant to C.R.C.P. 251.29, he must first demonstrate that he has complied with the following conditions:

(1) Cleland must pay George M. Kasnoff Jr. any amount awarded in Kasnoff's favor in the fee arbitration proceedings between Cleland and Kasnoff;

(2) Cleland must pay the costs incurred in this proceeding in the amount of $2,188.73, to the Attorney Regulation

Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202.