The PEOPLE of the State of
Colorado, Complainant,

v.

William A. ALEXANDER
Jr., Respondent.

No. 11PDJ069.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

May 8, 2012.

**OPINION AND DECISION IMPOSING
SANCTIONS PURSUANT TO
C.R.C.P. 251.19(c)**

### I. *SUMMARY*

Disbarment is typically appropriate when, in the absence of significant mitigating factors, a lawyer knowingly converts client funds. In this case, Respondent knowingly failed to return unearned retainers to six clients. In addition, he violated his clients' trust by neglecting to communicate with them, making numerous misrepresentations, failing to exercise diligence, neglecting to return client files, and failing to inform clients that he had been placed on disability inactive status. Respondent has not participated in this disciplinary proceeding. After considering the nature of Respondent's misconduct and its consequences, the aggravating factors, and the scarcity of countervailing mitigating factors, the Court finds the appropriate sanction here is disbarment.

### II. *PROCEDURAL HISTORY*

The People filed their complaint in this matter on September 1, 2011. Respondent failed to answer the complaint, and the Court granted a motion for default on January 19,

2012. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1] At the sanctions hearing on March 29, 2012, the Court heard testimony from Steve Larson.[2]

## III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case, as fully detailed in the admitted complaint.[3] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on October 9, 1979, under attorney registration number 09610.[4] He is thus subject to the Court's jurisdiction in these disciplinary proceedings.[5]

The People allege Respondent engaged in extensive misconduct while representing nine separate clients. A summary of that misconduct follows.

- *The Lopez Matter:* Faith Lopez ("Lopez") hired Respondent in early 2008 to help her file for Social Security disability benefits. Respondent filed an application on Lopez's behalf, which was denied on May 28, 2008. Although Respondent told Lopez he would appeal the decision, he did not do so. Throughout 2009, when Lopez contacted Respondent about the status of her case, he falsely told her that the case was still pending. After Lopez learned from the Social Security Administration that her application for benefits had been denied, she asked Respondent to return her file. He failed to do so, despite Lopez's repeated entreaties. Further, when he was placed on disability inactive status in January 2011, he neglected to notify Lopez that he could no longer represent her, as required by C.R.C.P. 251.28(b). Through this conduct, Respondent violated Colo.

RPC 1.3 (failure to act with reasonable diligence and promptness in representing a client); Colo. RPC 1.4(a)(3)-(4) (failure to communicate reasonably with a client); Colo. RPC 1.16(d) (failure to surrender a client's papers upon termination of the representation); Colo. RPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal); and Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

- *The Gaber Matter:* In 2005, Sharon Gaber ("Gaber") hired Respondent to assist her in obtaining Social Security disability benefits. Over the next five years, she called him about twenty times to check on the status of her case. He consistently yet untruthfully told her he was working on the case. In one instance, Respondent falsely told Gaber that he had filed an "injunction" in her matter. In early 2010, Gaber asked Respondent to give her documentation of the work he claimed to have performed. He did not do so. Respondent also failed to respond to Gaber's certified letter asking about the status of her case. After Respondent was placed on disability inactive status, he did not tell Gaber he could no longer represent her, nor did he return her client file. Through these actions and omissions, Respondent violated Colo. RPC 1.3, 1.4(a)(3)-(4), 1.16(d), 3.4(c), and 8.4(c).

- *The Milligan Matter:* Cynthia Milligan ("Milligan") engaged Respondent to help her obtain Social Security disability benefits and to assist her with a workers' compensation matter. Between 2004 and 2008, Respondent appeared in court with Milligan on five occasions regarding past due wages and medical expenses. After Milligan

---

1. *See People v. Richards,* 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

2. The Court admitted Exhibit 3 during the sanctions hearing.

3. *See* the People's complaint for further detailed findings of fact.

4. Respondent's registered business address is 3055 Austin Bluffs Parkway, Suite B, Colorado Springs, Colorado, 80918.

5. *See* C.R.C.P. 251.1(b).

provided documents Respondent had requested in late 2008, she heard nothing from him for a long period. In several subsequent phone conversations, he made untrue statements, including that a court date had been set in her case, that a hearing had taken place, and that her case had been continued. In late October 2010 and November 2010, Milligan called Respondent nineteen times to ask about the status of her case, but he did not return the calls. In addition, Respondent did not notify her when he was placed on disability inactive status. In the course of this representation, Respondent violated Colo. RPC 1.3, 1.4(a), 1.16(d), 3.4(c), and 8.4(c).

- *The Larson Matter*: In 2010, Steve Larson ("Larson") hired Respondent to represent him in a workers' compensation matter. Respondent received several workers' compensation payments on behalf of Larson, including a check for $2,552.41, dated October 10, 2010. Respondent placed that check in his COLTAF account, but instead of turning over the funds to Larson, he falsely told Larson that the check had been lost. Later on, Respondent untruthfully represented to Larson that the check had been reissued and mailed to him. Larson did not receive any portion of that check, nor did he authorize Respondent to use the funds for his personal benefit. In a second workers' compensation matter, Larson called Respondent thirty-three times to ascertain the status of his case, but Respondent never responded. When Respondent was placed on disability inactive status, he did not inform Larson that he could no longer represent him. Larson visited Respondent's office in January 2011, at which time Respondent fabricated an excuse that Pinnacol Assurance had lost any record of approval for the second workers' compensation matter. As in the client matters discussed above, Respondent failed to comply with Colo. RPC 1.3, 1.4(a)(3)-(4), 3.4(c), and 8.4(c). In addition, Respondent violated Colo. RPC 1.15(a) (failure to keep client funds separate from the lawyer's own property) and Colo. RPC 1.15(b) (failure to deliver client funds).

- *The Martin Matter*: Frank Martin ("Martin") hired Respondent in 2010 to defend his business against a workers' compensation claim. Martin gave Respondent a $5,000.00 advance fee. Respondent deposited the check into a personal checking account, and the same day he transferred $3,000.00 from that checking account into his COLTAF account. Respondent's law partner performed approximately $3,400.00 of legal work on Martin's behalf. At a hearing in Martin's matter, the court granted benefits to Martin's employee, yet Respondent told Martin that everything had gone "well." When Martin learned the truth about the court's order, the deadline for filing an appeal had passed. Just as Respondent failed to inform Martin of the adverse judicial decision, Respondent neglected to advise Martin that he had been placed on disability inactive status. Finally, Respondent did not comply with Martin's written request for the return of his file, an accounting of the retainer funds, and a refund of unearned retainer funds. By failing to refund the unearned portion of the retainer, Respondent knowingly converted funds belonging to Martin. Though this conduct, Respondent violated Colo. RPC 1.3, 1.4(a)(3)-(4), 3.4(c), 1.15(a), 1.15(b), 1.16(d), and 8.4(c).

- *The Crask Matter*: In 2010, James Crask ("Crask") hired Respondent's law firm to assist him in a workers' compensation matter. After the lawyer assigned to Crask's case resigned from the firm, Respondent assumed responsibility for the case. Respondent said he would seek permission for Crask to obtain a second medical opinion. But Respondent missed the deadline for that filing. He then received and deposited into his COLTAF account an $11,012.98 benefits check for the Crask matter. Respondent used

those funds for his own benefit without Crask's authorization, thereby engaging in knowing conversion. In the course of representing Crask, Respondent violated Colo. RPC 1.3, 1.4(a), 1.15(a), 1.15(b), and 8.4(c).

- *The Roberts Matter:* Gary Roberts ("Roberts") hired Respondent to represent him in a workers' compensation case in 2009. In late 2010, Respondent advised Roberts that he would file for $20,000.00 in punitive damages on his behalf. Roberts subsequently made several unsuccessful attempts to contact Respondent. In November 2010, Respondent deposited into his COLTAF account a disability check made out to Roberts in the amount of $4,874.82. Roberts did not receive those funds, nor did he authorize Respondent to keep the funds; as such, Respondent knowingly converted funds belonging to Roberts. When Respondent was placed on disability inactive status, he did not tell Roberts that the representation would terminate. Through this conduct, Respondent violated Colo. RPC 1.4(a)(3)-(4), 3.4(c), 1.15(a), 1.15(b), and 8.4(c).

- *The Batson Matter:* Lester Batson ("Batson") hired Respondent in 2010 for a workers' compensation matter. Batson called Respondent several months thereafter and received a message indicating that the phone number was no longer in service. Respondent placed in his COLTAF account a check payable to Batson for $6,497.66 in November 2010. Batson did not receive any portion of those funds, and he did not authorize Respondent to use the funds for his own benefit. In the course of the Batson representation, Respondent violated Colo. RPC 1.4(a)(3)-(4), 1.15(a), 1.15(b), and 8.4(c).

- *The Clark Matter:* Scott Clark ("Clark") hired Respondent in 2010 for representation in a workers' compensation case; in particular, Clark asked Respondent to assist him in meeting specific deadlines associated with a final admission of liability. Clark paid Respondent a $2,500.00 retainer. In late 2010, Clark left several messages for Respondent that went unreturned. After Respondent was placed on disability inactive status, he did not inform Clark that he could no longer represent him. Respondent subsequently failed to respond to additional messages from Clark. Although Respondent performed no work on Clark's case, he did not return the retainer funds. Because Clark did not authorize Respondent to keep the retainer, Respondent engaged in knowing conversion of those funds. In addition, Respondent failed to return Clark's file and to give him an accounting. Through the actions described above, Respondent violated Colo. RPC 1.3, 1.4(a)(3)-(4), 1.15(a), 1.15(b), 1.16(d), 3.4(c), and 8.4(c).

## IV. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[6] In imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and the existence of aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* The complaint, as referenced by the order of default, establishes that Respondent violated a duty to his clients by converting funds, making false statements, failing to return unearned retainers, acting without reasonable diligence, and inadequately communicating with his clients.[7] Respondent also failed to abide by a duty he owed the legal system when he neglected to inform his clients that he had been placed on disability

---

6. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

7. *See* ABA *Standard* 4.0.

inactive status.[8] In addition, by failing to take appropriate measures upon termination of his representations, he violated his duties as a professional.[9]

*Mental State:* The complaint explicitly establishes that Respondent knowingly failed to inform his clients of his inactive status, knowingly made untrue statements to his clients, and knowingly converted client funds. The complaint also strongly suggests that Respondent engaged in the other misconduct in this matter either knowingly or recklessly.

*Injury:* Respondent injured his clients by depriving them of funds belonging to them. His failure to exercise diligence caused his clients potentially serious injury because they were denied a fair opportunity to seek benefits. For example, Larson testified at the sanctions hearing that Respondent repeatedly lied about the status of his case and did not timely file his workers' compensation claim. As a result, Larson's treatment for his eye condition was delayed. Larson's retinas are now permanently damaged, but he believes his eyes would have healed properly had he received timely treatment. Moreover, because Respondent withheld funds from Larson, Larson was unable to pay bills, had to borrow money from family members, and was unable to take advantage of a professional opportunity.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

■ Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[10] The Court considered evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction. Because Respondent did not partici-

pate in the disciplinary proceeding, the Court is aware of just one mitigating circumstance.[11]

*Prior Disciplinary Offenses—9.22(a):* Respondent received a letter of admonition in 1992 for having failed to respond to seven letters from a government agency over a period of two and a half years. In 2011, he was suspended for two years as a result of misconduct similar to that presented here, including incompetence, neglect, and failure to communicate with clients.

*Dishonest and Selfish Motive—9.22(b):* The Court concludes Respondent acted with a dishonest and selfish motive by concealing his failure to perform work on his clients' matters. He also acted dishonestly and selfishly by converting client funds to his own use.

*Pattern of Misconduct—9.22(c):* Respondent committed multiple instances of the same misconduct in numerous client matters.

*Multiple Offenses—9.22(d):* Respondent engaged in myriad rule violations, ranging from inadequate communication to lack of diligence to conversion.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to the bar in 1979. The misconduct at issue here reflects particularly poorly on such a long-standing practitioner.

*Physical Disability—9.32(h):* The People advised the Court during the sanctions hearing that Respondent has experienced some medical difficulties, including diabetes. Because Respondent did not appear at the hearing, the Court has minimal information about the extent of Respondent's medical problems and their bearing on his misconduct. As such, the Court accords sparing weight to this mitigating factor.

---

8. *See* ABA *Standard* 6.0.

9. *See* ABA *Standard* 7.0.

10. *See* ABA *Standards* 9.21 & 9.31.

11. Respondent has repaid the amounts he owed to his clients. However, the People claim that the District Attorney's Office compelled him to do so, and Respondent has not challenged that

assertion. While a timely, good faith effort to make restitution is a mitigating factor under ABA *Standard* 9.32(d), forced or compelled restitution is neither an aggravating factor nor a mitigating factor. *See* ABA *Standard* 9.4(a). In the absence of evidence that Respondent made restitution voluntarily, the Court finds it inappropriate to credit Respondent's restitution under ABA *Standard* 9.32(d).

### Analysis Under ABA *Standards* and Colorado Case Law

ABA *Standard* 4.11 provides that disbarment is typically warranted when a lawyer knowingly converts client property and thereby causes injury or potential injury.[12] Suspension is the presumptive sanction for several of the other instances of misconduct here.[13] The ABA *Standards* further provide that, in cases involving multiple charges of misconduct, "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct."[14]

The Colorado Supreme Court has held that, except where significant mitigating factors apply, disbarment is the appropriate sanction for the knowing conversion of client funds in violation of Colo. RPC 8.4(c).[15] Where conversion of client funds is coupled with other serious rule violations, it is all the more clear that disbarment is warranted. In light of the numerous instances of conversion and other misconduct in this matter and the lone mitigating factor, the ABA *Standards* and Colorado case law without doubt call for disbarment.

### V. *CONCLUSION*

Admission to the Colorado bar obligates attorneys to adhere to high moral and ethical standards. Respondent flouted those standards by abdicating his professional responsibilities in nine separate representations. Respondent's indifference to his clients and dishonesty reflect very poorly on the legal profession. In light of the serious nature of Respondent's misconduct and the need to protect the public from future such misconduct, the Court concludes Respondent should be disbarred.

### VI. *ORDER*

The Court therefore **ORDERS**:

1. **WILLIAM A. ALEXANDER JR.**, attorney registration number 09610, is **DISBARRED.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [16]

2. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before May 29, 2012.** No extensions of time will be granted. If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within seven days, unless otherwise ordered by the Court.

3. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a "Statement of Costs" within fourteen days from the date of this order. Respondent's response to the People's statement, if any, must be filed no later than fourteen days thereafter.

---

12. Although Appendix 1 of the ABA *Standards* indicates that the standards applicable to violations of Colo. RPC 8.4(c) are ABA *Standards* 4.6 and 5.1, the Court determines that ABA *Standard* 4.1 is more relevant to this type of violation of Colo. RPC 8.4(c), because that standard specifically addresses conversion.

13. *See* ABA *Standards* 4.42, 4.62, 6.22.

14. *See* ABA *Standards* § II at 7.

15. *In re Haines*, 177 P.3d 1239, 1250 (Colo. 2008); *see also In re Cleland*, 2 P.3d 700, 703 (Colo.2000) (holding that the presumed sanction for knowing misappropriation of client funds is disbarment); *People v. Varallo*, 913 P.2d 1, 10–11 (Colo.1996) (ruling that the presumed sanction for knowing conversion of client funds is disbarment, regardless of whether the lawyer intended to permanently deprive the client of those funds); *cf. In re Fischer*, 89 P.3d 817, 822 (Colo.2004) (noting that mitigating factors may warrant a departure from a presumption of disbarment in some cases).

16. In general, an order and notice of sanction will issue thirty-one days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-one days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.