**The PEOPLE of the State of Colorado, Complainant:**

v.

**Keith Emory SANDOVAL, Respondent.**

**No. 13PDJ090.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

June 17, 2014.

**OPINION AND DECISION IMPOSING
SANCTIONS PURSUANT TO
C.R.C.P. 251.19(c)**

### I. *SUMMARY*

Disbarment is generally appropriate when an attorney abandons his practice, knowingly fails to perform services, and engages in a pattern of neglect with respect to client matters, causing serious injury or potential injury to clients. In this case, Respondent abandoned six clients, converted funds in five matters, and then failed to cooperate in the resulting disciplinary proceedings. The Court finds the appropriate sanction is disbarment.

### II. *PROCEDURAL HISTORY*

On May 17, 2013, Respondent was suspended from the practice of law for a period of one year and one day, with sixty days served and ten months and one day stayed upon the successful completion of a two-year period of probation. Respondent's suspension was premised upon his neglect and abandonment of two client matters. The suspension took effect on June 21, 2013. Respondent never filed an affidavit of compliance with the terms of his suspension, nor did he seek reinstatement. He is thus currently suspended from the practice of law.

The People filed their complaint in this case on November 23, 2013. On that same day, the People served Respondent by certified mail at his registered business address of 2600 S. Syracuse Way, Greenwood Village, CO 80111.[1] Respondent failed to answer, and the Court granted the People's motion for default on February 3, 2014. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[2] At the sanctions hearing held on May 5, 2014, the PDJ considered the People's exhibits 1 through 5.

### III. *ESTABLISHED FACTS AND RULE VIOLATIONS*

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on December 24, 2008, under attorney registration number 40679. He is thus subject to the Court's jurisdiction in these disciplinary proceedings.[3]

As established by the Court's order entering default, Respondent engaged in extensive misconduct in seven separate matters. Because Respondent has defaulted, the admitted facts and rule violations of each matter are presented in abbreviated form. Further details are available in the People's complaint.

#### Trust Account Violations

■ In 2012 and 2013, Respondent maintained two client trust accounts at Wells Fargo bank. In September 2012, Respon-

---

1. Proof of Service of Citation (Nov. 27, 2013). The People also mailed the complaint and citation to Respondent at 6533 S. Pierson Way, Littleton, Colorado 80127–5841.

2. *See* C.R.C.P. 251.15(b); *People v. Richards,* 748 P.2d 341, 346 (Colo.1987).

3. *See* C.R.C.P. 251.1(b).

dent entered into a one-year contract for marketing services with Bullseye Local Marketing Inc. Bullseye charged Respondent $999.00 per month for marketing services. On October 19, 2012, Respondent authorized Bullseye to automatically deduct the monthly marketing charges from one of the Wells Fargo trust accounts. From April through June 2013, Bullseye made six automatic payments from this account, which contained insufficient funds. As a result, Respondent's trust account carried a negative balance. During this same period, First National Bank of Omaha deducted four debit charges from Respondent's second Wells Fargo trust account, resulting in insufficient funds and negative account balances.

Through this conduct, Respondent violated Colo. RPC 1.15(i)(2) (all trust account withdrawals and transfers shall be made by a lawyer admitted to practice law in this state or by a person supervised by such lawyer and may be made only by authorized bank or wire transfer or by check payable to a named payee).

### The Coe Matter

On April 9, 2013, Kara Coe contacted Respondent by phone about representing her daughter, Meagan Coe, in a custody matter. Coe discussed the details of the matter with Respondent, and he asked for a $1,500.00 retainer. On April 9, 2013, Respondent deducted this amount from Coe's checking account with her permission. Respondent then deposited $1500.00 into a U.S. Bank trust account. He did not provide a fee agreement to either Coe or her daughter, nor did he provide them with a written communication stating the basis or rate of his fee.

On April 9, 2013, Respondent met with Coe's daughter at his office, and later that evening he sent her a completed "Petition for Allocation of Parental Responsibilities" that he created with information she had provided him. Respondent advised her to review the document and if correct, sign, notarize and return it to him. On April 25, 2013, she returned the documents to Respondent. Respondent acknowledged receipt of the documents on April 29, 2013. After this date, neither Coe nor her daughter heard from Respondent about the status of the case. They both sent Respondent numerous requests for information by phone and email, but Respondent did not respond.

On June 4, 2013, Coe learned that Respondent's license to practice law had been suspended. She sent Respondent an email on that day asking for a full refund of her retainer and about his suspension. Respondent replied to the email, stating, "[m]y license has not been suspended." At that time, Respondent had not begun serving his suspension, but his suspension was to become effective on June 21, 2013. Respondent sent Coe an email on June 6, 2013, stating, "I'll refund your entire retainer this week." Respondent never refunded the retainer, nor has he responded to Coe or her daughter's repeated attempts to communicate with him. Respondent never filed anything in the case, and the Coes were unable to hire a new attorney because they lacked the funds to do so.

Respondent's conduct in this matter violated Colo. RPC 1.3 (failure to act with reasonable diligence and promptness in representing a client); Colo. RPC 1.4(a)(4) (failure to communicate reasonably with a client); Colo. RPC 1.5(b) (failure to provide written communication of the basis or rate of the fee); Colo. RPC 1.16(d) (failure to surrender a client's papers upon termination of the representation); Colo. RPC 3.4(c) (knowingly disobeying the obligations under the rules of a tribunal except for an open refusal based upon an assertion that no valid obligation exists); and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

### The Laleh Matter

In March 2013, Kahlil Laleh met with Respondent to discuss Laleh's dissolution of marriage matter. Respondent informed Laleh that his hourly fee was $175.00 and that he would need a $2,000.00 retainer. On March 26, 2013, Laleh paid Respondent the retainer by check. Respondent deposited the check into a U.S. Bank trust account. Respondent did not provide Laleh with a fee agreement, nor did he give him a written

communication stating the basis or rate of the fee.

During April and May 2013, Respondent never communicated with Laleh about the status of his case. Respondent finally returned Laleh's telephone calls sometime in May 2013. During the conversation, Respondent informed Laleh that his wife had been served and that Respondent was waiting for her response. On June 5, 2013, Laleh sent Respondent an email indicating that he had attempted on numerous occasions to contact Respondent but had not received a return call, requesting information about the status of his case. Two days later, Respondent emailed Laleh, "I'm sorry about the delay. Here's where we're at. I need to pester the court into giving us a date for an initial status conference. I've attached the forms for the information you will need to provide to move the case forward." Respondent sent a follow-up email that same day attaching a blank "Sworn Financial Statement and Mandatory Disclosures" form. However, Respondent never filed Laleh's case with the court and never "pestered" the court to give him a date for the initial status conference.

Respondent never advised Laleh that his law license had been suspended. After the June 7, 2013, email, Laleh never heard from Respondent again, despite making several attempts. For instance, on July 3, 2013, Laleh sent Respondent an email terminating his representation and asking Respondent to refund his unearned $2,000.00. Respondent never replied. Then on July 8, 2013, Laleh visited Respondent's office and was informed by the receptionist that other people were looking for Respondent as well but that she did not know his whereabouts. Also in July 2013, Laleh had to hire a new attorney to represent him in his divorce. Respondent never earned any fees for this matter and never returned Laleh's unearned retainer or his client file.

Through the actions described above, Respondent violated Colo. RPC 1.3, 1.4(a)(4), 1.5(b), 1.16(d), 3.4(c), and 8.4(c).

### The Woods Matter

■ On November 9, 2012, Jamie Woods retained Respondent to represent him in a child support matter. Woods resides in North Carolina, but his child and his child's mother live in Colorado. On November 9, 2012, Woods's grandparents, Geraldine and James, paid Respondent $1,500.00 for the representation. Respondent did not provide Woods a fee agreement or a written communication stating the basis or rate of his fees. On December 6, 2012, the Arapahoe County Department of Human Services opened a support case, seeking an arrearage of child support from Woods in the amount of $720.00. Woods spoke with Respondent a few of times in November and December 2012 about his case. On December 31, 2012, Respondent entered his appearance but took no further action on the case.

On April 8, 2013, Woods sent his financial information to Respondent. Thereafter Woods made numerous attempts to contact Respondent, but Respondent never returned his calls or respond to his requests for information. Respondent did not refund any unearned fees or provide Woods with an accounting. Through this conduct, Respondent violated Colo. RPC 1.3, 1.4(a)(4), 1.5(b), 3.4(c), and 8.4(c).

### The Temple Matter

■ In July 2012, Rondi Temple retained Respondent to represent her in her divorce case filed in Douglas County District Court. Wendy Monteith represented Temple's husband in the divorce. On May 22, 2013, the district court sent Respondent emails outlining its attempts to contact him to set a pretrial conference date. The email indicated that the clerk was unable to contact him because his voicemail box was full and notified him that if he did not respond by May 24, 2013, a date would be chosen without his input. Respondent did not reply to the clerk's email, and the court set a telephone conference for August 6, 2013. Per the court's instructions, Monteith tried unsuccessfully to contact Respondent prior to the teleconference by calling his office number multiple times. Monteith then checked the Colorado Supreme Court website and learned that Respondent's license to practice law had been suspended on June 21, 2013. Respondent did not inform Monteith of his

suspension or indicate that he would not appear at the conference. The court held the pretrial telephone conference, as scheduled. There, Monteith advised the court that she had been unable to contact Respondent and had learned that his license to practice law had been suspended.

After the hearing, the clerk spoke with Temple regarding Respondent's failure to appear at the telephone conference and his licensure status. Temple informed the clerk that she was unaware that Respondent's license had been suspended. Temple indicated that she had been attempting to contact Respondent for months, but he had not replied to her requests for information. After speaking with the clerk, Temple filed a motion for Respondent to be withdrawn from her case, and on August 13, 2013, the court granted the motion. Since August 2013, Temple attempted unsuccessfully to contact Respondent many times by phone, email and text message. She left him messages asking him to return any unearned fees, but he never did so. Respondent also never provided Temple with an accounting. Through these actions, Respondent violated Colo. RPC 1.3, 1.4(a)(4), and 3.4(c).

### The Rodriguez Matter

In February 2013, Eva Rodriguez retained Respondent to represent her in a divorce. On February 10, 2013, she paid Respondent $2,000.00 with a debit card. Respondent then deposited these funds into his operating account, but he had not earned the fees when he made the deposit. He did not give Rodriguez a fee agreement, nor did not give her any written communication stating the basis or rate of the fee. On March 6, 2013, Respondent filed a petition for dissolution of Rodriguez's marriage in Arapahoe County District Court. On April 25, 2013, Respondent appeared at an initial status conference. Four days later, the court entered an order directing the parties to file a separation agreement no later than July 8, 2013, and to attend mediation.

Rodriguez emailed Respondent her financial disclosures on May 8, 2013. About a month later, Respondent sent her an email advising her that he reviewed her file but did not see the financial disclosures. That same day, Rodriguez sent Respondent an email explaining that she had provided him with the financial disclosures a month prior and again attached the documents to the email. Beginning on June 5, 2013, Rodriguez called Respondent numerous times and left voicemail messages asking him to contact her, but he did not return her phone calls. On June 11, 2013, Chris Basler, counsel for Rodriguez's husband, filed a motion for an extension of time to complete the mediation because he had been unable to contact Respondent. On June 14, 2013, Respondent emailed Basler's paralegal, stating that he would deliver the disclosures three days later and would be contacting Basler's firm to schedule a conference call. Respondent did not tell Basler that his law license would be suspended on June 21, 2013. He also never disclosed to Rodriguez that he was suspended from the practice of law.

On July 23, 2013, Rodriguez sent Respondent an email outlining her failed attempts to communicate with him and advised Respondent that she was terminating their relationship. Respondent did not respond. Around this time, Rodriguez's then-husband called her and asked why she wasn't providing the required documents to the court. This was when Rodriguez first learned that Respondent had been unresponsive both to Basler and to the court. Rodriguez was foreclosed from communicating with Basler because she was represented. Rodriguez then spoke with the court clerk about how to remove Respondent from her case. On August 15, 2013, Rodriguez filed a pro se motion to withdraw Respondent from her case, and the court granted it. The next day, she also filed a motion for extension of time to find new counsel, which she was able to do on August 22, 2013. Rodriguez had to pay her new attorney additional money to complete her case. The court awarded $1,345.00 in attorney fees and costs against Rodriguez for Respondent's failure to comply with discovery. However, on September 5, 2013, the $1,345.00 judgment was released by mutual agreement of the parties in the separation agreement. Respondent never responded to

Rodriguez's requests for information or for a refund of unearned fees. Nor has he provided Rodriguez with an accounting or returned her file. In the course of this representation, Respondent violated Colo. RPC 1.3, 1.4(a)(4), 1.5(b) and (f) (unearned fees are required to be kept in the lawyer's trust account until earned), 3.4(c), 1.16(d), and 8.4(c).

### The Robben Matter

■ On April 10, 2013, Misty Robben and her mother met with Respondent for a free consultation. That same day, Robben retained Respondent to represent her in the dissolution of her common law marriage, and Robben's mother, Jean, paid Respondent $1,500.00 by check. Respondent did not provide a fee agreement to Robben or her mother and did not provide written communication stating the basis or rate of the fee. Also on that day, Respondent deposited the $1,500.00 into his trust account. On April 24, 2013, Respondent transferred these funds from his trust account to his personal account. Subsequently, Robben met with Respondent for about one hour in order to fill out forms.

Shortly thereafter, Robben reconciled with her husband. From May 1 to 15, 2013, she called Respondent several times, notifying him to stop working on her case and requesting a he return her call. Respondent never responded. On May 15, 2013, Robben sent Respondent an email inquiring about the remainder of her unearned retainer fee. On May 16, 2013, Respondent replied, writing: "I'll get your account reconciled by month's end. Best of luck." But Robben did not receive an accounting or a refund. She sent Respondent another email on June 12, 2013, asking when her check would be ready. Two days later, Respondent replied, "Go ahead and send me the address you'd like your refund mailed to." Robben complied, but when she had not received a check or an accounting by June 19, 2013, she made multiple attempts to communicate with Respondent by email and phone. Respondent never responded, nor has he refunded her unearned fees. He also did not notify Robben that he was suspended from the practice of

law. She learned about his suspension after looking him up on the Colorado Supreme Court website. Through this conduct, Respondent violated Colo. RPC 1.4(a)(4), 1.5(b), 3.4(c), 1.16(d), and 8.4(c).

■ Respondent violated Colo. RPC 8.1(b) by failing to cooperate with the People's investigation of all the above matters.

## IV. SANCTIONS

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[4] In imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* Respondent violated duties he owed to his clients when he did not pursue their cases diligently and failed to communicate with them. He also disregarded his obligations to his clients when he knowingly converted their fees and abandoned them. Respondent further violated his duties to the legal system by failing to notify his clients about his suspension and by failing to participate in the disciplinary proceedings.

*Mental State:* The entry of default establishes that Respondent acted knowingly when he converted funds, disobeyed obligations under the rules of a tribunal, and refused to respond to his clients' requests for information. He also acted knowingly when he failed to communicate with his clients and neglected their cases.

*Injury:* Respondent caused serious injury to his clients when he knowingly converted their funds, in particular by consuming funds and refusing to refund the retainer that Coe needed to hire new counsel. His conduct

4. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

caused Rodriguez and Laleh financial hardship because they were forced to hire new attorneys without the benefit their retainers. Respondent also compromised the integrity of the legal profession by tarnishing his clients' and the public's confidence in attorneys and the legal profession. Further, Respondent abandoned six clients' cases, causing them serious potential injury by failing to advance their efforts in their legal matters.

## ABA *Standards* 4.0–7.0—Presumptive Sanction

Under the ABA *Standards,* the presumptive sanction for Respondent's misconduct is disbarment. ABA *Standard* 4.11 provides that disbarment is typically warranted when a lawyer knowingly converts client property and thereby causes injury or potential injury.[5] Similarly, ABA *Standard* 4.41 calls for disbarment when a lawyer causes serious or potentially serious injury to a client by knowingly failing to perform services for a client, engaging in a pattern of neglect with respect to client matters, or abandoning the practice.

## ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations or factors that justify an increase in the presumptive discipline to be imposed, while mitigating circumstances warrant a reduction in the severity of the sanction.[6] The Court considers evidence of the following aggravating circumstances in deciding the appropriate sanction. Respondent failed to participate in this disciplinary proceeding, and thus the Court is unaware of any mitigating factors.

*Prior Disciplinary Offenses—9.22(a):* Respondent was suspended on June 21, 2013, for neglecting and abandoning two client matters.

*Dishonest or Selfish Motive—9.22(b):* The Court finds that Respondent acted with a selfish motive when he knowingly converted clients' funds in five separate matters.

*Pattern of Misconduct—9.22(c):* Respondent engaged in an extensive pattern of neglect in six client matters and converted five clients' funds during the same general timeframe.

*Multiple Offenses—9.22(d):* Respondent committed more than half a dozen types of offenses: he failed to respond to the People's requests for investigation, abandoned multiple clients, did not keep his clients reasonably informed about their cases, failed to provide his clients with written fee agreements or full accountings, neglected to return his clients' property upon termination, and knowingly converted his clients' funds.

*Indifference to Making Restitution—9.22(j):* Respondent has not repaid Coe, Laleh, Woods, Rodriguez, or Robbins any of their funds.

## Analysis Under ABA *Standards* and Colorado Case Law

■ The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[7] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[8] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

In this case, ABA *Standards* 4.11 and 4.41 prescribe disbarment. Further, the ABA *Standards* counsel that in cases involving multiple types of attorney misconduct, the ultimate sanction should at least be consis-

---

5. Although Appendix 1 of the ABA *Standards* indicates that the standards applicable to violations of Colo. RPC 8.4(c) are ABA *Standards* 4.6 and 5.1, the Court determines that ABA *Standard* 4.1, "Failure to Preserve the Client's Property," is more relevant to conversion charged under Colo. RPC 8.4(c).

6. *See* ABA *Standards* 9.21 & 9.31.

7. *See In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *In re Fischer,* 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

8. *In re Attorney F.,* 285 P.3d at 327 (quoting *People v. Rosen,* 198 P.3d 116, 121 (Colo.2008)).

tent with the sanction for the most serious disciplinary violation.[9]

The Colorado Supreme Court likewise has held that, except where significant mitigating factors apply, disbarment is the appropriate sanction for knowing conversion of client funds in violation of Colo. RPC 8.4(c).[10] Where a lawyer's conversion of client funds is coupled with abandonment of the client, it is all the more clear that disbarment is warranted. For instance, in *People v. Kuntz,* the Colorado Supreme Court determined disbarment was appropriate when a lawyer accepted legal fees from several clients, performed little to no work on their cases, and then abandoned the clients without returning their funds.[11] Similarly, in *In re Stevenson,* a lawyer was disbarred after abandoning his client and misappropriating funds.[12] The Colorado Supreme Court noted in *Stevenson* that the lawyer's failure to participate in the disciplinary proceeding underscored the decision that disbarment was appropriate.[13]

Although mitigating factors merit close examination and may in some cases warrant a departure from the presumption of disbarment,[14] this is not such a case. To the contrary, the lack of mitigating circumstances and presence of five aggravating factors weighs in favor of disbarment. Accordingly, the Court concludes Respondent should be disbarred.

## V. CONCLUSION

Respondent abandoned several clients, converted funds, and failed to cooperate in this disciplinary proceeding. Admission to the Colorado bar obligates attorneys to adhere to high moral and ethical standards. Through his numerous instances of misconduct, Respondent ignored those standards, seriously injuring his clients, the public, and the legal profession. In order to protect the public, and given the serious nature of Respondent's misconduct, the Court determines that Respondent should be disbarred.

## VI. ORDER

The Court therefore **ORDERS:**

1. **KEITH EMORY SANDOVAL,** attorney registration number 40679, is **DISBARRED** from the practice of law **IN THE STATE OF COLORADO.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment."[15]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent also **SHALL** file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d).

4. The parties **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or**

9. ABA *Standards* § 2 at 7.

10. *See In re Haines,* 177 P.3d 1239, 1250 (Colo. 2008) (disbarring an attorney who knowingly misappropriated $70,000.00 belonging to her client's estate); *In re Cleland,* 2 P.3d 700, 703 (Colo.2000) (disbarring an attorney who knowingly misappropriated his client's funds, commingled funds, and misrepresented the status of his client's case); *People v. Varallo,* 913 P.2d 1, 10–11 (Colo.1996) (holding that the presumed sanction for knowing conversion of client funds is disbarment, regardless of whether the lawyer intended to permanently deprive the client of those funds).

11. 942 P.2d 1206, 1208 (Colo.1997); *see also People v. Roybal,* 949 P.2d 993 (Colo.1997) (disbarring attorney for abandoning clients, failing to return unearned fees, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

12. 979 P.2d 1043, 1044–45 (Colo.1999).

13. *Id.* at 1045.

14. *In re Fischer,* 89 P.3d at 822; *In re Cleland,* 2 P.3d at 703 ("When a lawyer knowingly converts client funds, disbarment is 'virtually automatic,' at least in the absence of significant factors in mitigation.").

15. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

before Tuesday, July 8, 2014. No extensions of time will be granted. Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the Court.

5. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs" **within fourteen days of the date of this order.** Respondent may file his response to the People's statement, if any, within seven days thereafter.

6. Respondent **SHALL** pay restitution to the following individuals **on or before Tuesday, July 22, 2014,** in the amounts forth below. **On or before Tuesday,** July 29, 2014, Respondent **SHALL** provide the People with written notice of his compliance with this provision.

a. $1,500.00 to Kara Coe.

b. $2,000.00 to Kahlil Laleh.

c. $1,500.00 to Geraldine and James Woods.