The PEOPLE of the State of
Colorado, Complainant,

v.

Terry ROSS, Respondent.

Nos. 14PDJ078, 14PDJ093.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

May 6, 2015.

Following a sanctions hearing, the Presiding Disciplinary Judge disbarred Terry

Ross (Attorney Registration Number 16588). The disbarment took effect on June 10, 2015.

Ross engaged in misconduct in five client cases. First, she received a $3,000.00 retainer in a divorce case. The client terminated her services and requested a refund, but Ross never responded. She thereby violated Colo. RPC 1.16(d) (2008) (a lawyer shall protect a client's interests upon termination of the representation, including by refunding unearned fees).

In a second matter, a client hired Ross to appeal a civil case, but Ross never filed an opening brief. The court of appeals dismissed the appeal when Ross failed to respond to the motion to dismiss. There, Ross violated Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness when representing a client); Colo. RPC 1.4(a)(4) (a lawyer shall promptly comply with reasonable requests for information); and Colo. RPC 1.16(d) (2008).

In a third case, Ross represented a client in a child-support appeal. The client lost contact with Ross, and Ross never filed anything on her client's behalf. Ross disregarded the client's request for a refund; instead, she knowingly converted her client's funds. Her misconduct in this matter included violations of Colo. RPC 1.4(a)(4); Colo. RPC 1.16(d) (2008); Colo. RPC 1.5(f) (a lawyer does not earn fees until the lawyer confers a benefit on the client or performs a legal service); Colo. RPC 8.1(b) (a lawyer shall not knowingly fail to respond to a lawful demand for information from a disciplinary authority); and Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

In a fourth matter, Ross failed to comply with court instructions. The judge and Ross's client were thereafter unable to reach her. There, Ross violated Colo. RPC 1.3; Colo. RPC 1.16(d) (2008); Colo. RPC 8.1; Colo. RPC 1.4(a)(3) (a lawyer shall keep a client reasonably informed about the status of the matter); and Colo. RPC 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal).

Fifth, Ross was appointed to assist a client in appealing an order that terminated her parental rights. Ross never filed the petition on appeal. When Ross failed to respond to a show-cause order, the court of appeals dismissed the case with prejudice and terminated the client's parental rights. In this representation, Ross violated Colo. RPC 1.3; Colo. RPC 1.4(a)(3); Colo. RPC 1.4(a)(4); Colo. RPC 1.16(d); Colo. RPC 3.4(c); and Colo. RPC 8.1.

In addition to her misconduct involving specific clients, Ross averred on several attorney registration statements that she was exempt from the requirement to establish a trust account because she did not receive, maintain, or disburse client funds in Colorado. Those statements were false. She thus violated Colo. RPC 1.15(d)(1) (2008) (a lawyer in private practice who receives client funds shall maintain a trust account in which the lawyer deposits advance fees and funds. entrusted to the lawyer's care) and Colo. RPC 8.4(c).

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

On April 15, 2015, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). Catherine S. Shea appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), and Terry Ross ("Respondent") did not appear. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

### I. SUMMARY

Disbarment is generally appropriate when an attorney converts clients funds or abandons client matters, causing serious injury or potential injury to clients. In this case, Respondent converted funds and abandoned several clients, among other misconduct. The Court finds the appropriate sanction is disbarment.

### II. PROCEDURAL HISTORY

The People filed their complaint in case number 14PDJ078 on September 22, 2014. The next day, sent copies via certified mail and regular mail to Respondent at her regis-

tered business address of 3773 Cherry Creek Drive North, # 575, Denver, Colorado 80209. Respondent failed to answer, and the Court granted the People's motion for default on December 4, 2014. On October 31, 2014, the People filed a complaint in case number 14PDJ093 and sent copies via regular and certified mail on November 5, 2014, to Respondent at her registered business address. The Court granted the People's motion for default on January 20, 2015. Upon the entry of default, the Court deems all facts set forth in the complaints admitted and all rule violations established by clear and convincing evidence.[1]

On January 22, 2015, the Court consolidated case number 14PDJ093 with case number 14PDJ078. At the sanctions hearing held on April 15, 2014, the PDJ considered the People's exhibits 1 through 5 and heard testimony from Lyndsay Wilson (f/k/a Lyndsay Usseglio), Lisa Anselmo, Karen Bedell, and Valarie Russo.

### III. *ESTABLISHED FACTS AND RULE VIOLATIONS*

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 20, 1987, under attorney registration number 16588. She is thus subject to the Court's jurisdiction in these disciplinary proceedings.[2]

■ As established by the Court's order entering default, Respondent engaged in extensive misconduct in five separate matters. Because Respondent has defaulted, the admitted facts and rule violations of each matter are presented in abbreviated form. Further details are available in the People's complaints.

#### Usseglio Matter

On May 14, 2013, Lyndsay Usseglio hired Respondent to represent her in a divorce case. Usseglio and Respondent signed a fee agreement providing that Respondent's hourly fee was $300.00. Usseglio paid Respondent a $3,000.00 retainer.

One week later, Respondent filed a dissolution petition on Usseglio's behalf in Jefferson County District Court. Around July 23, 2013, Usseglio terminated Respondent's representation, requesting a refund of her retainer balance and an accounting. Respondent never responded to that request. On July 23, 2013, Usseglio's new counsel, Jonathan Goldman, asked that Respondent sign a substitution of counsel form and give him Usseglio's file. Two days later, Respondent replied, saying she would sign the substitution of counsel form and have Usseglio's file available the following week, after she returned from vacation. About two weeks later, Respondent sent Goldman the pleadings she had drafted and filed for Usseglio, but she provided nothing else. Despite Usseglio's additional requests for an accounting and refund, Respondent never gave complied.

Respondent did not have a COLTAF trust account during her representation of Usseglio. In her attorney registration statements for the years 2011, 2012, and 2013, Respondent claimed she was exempt from the requirement to establish such an account because she did not receive, maintain, or disburse client funds in Colorado. Respondent's statements were false because in fact she did receive, maintain, or disburse client funds during those years.

Through these actions, Respondent violated Colo. RPC 1.15(d)(1) (2008) (a lawyer in private practice who receives client funds shall maintain a trust account in which the lawyer deposits advance fees and funds entrusted to the lawyer's care); Colo. RPC 1.16(d) (a lawyer shall protect a client's interests upon termination of the representation, including by refunding unearned fees); and Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

#### Anselmo Matter

In February 2013, Lisa Anselmo hired Respondent to represent her in an appeal. Anselmo paid Respondent a $3,000.00 retainer.

---

1. *See* C.R.C.P. 251.15(b); *People v. Richards,* 748 P.2d 341, 346 (Colo.1987).

2. *See* C.R.C.P. 251.1(b).

The appeal involved a civil suit filed by Anselmo and her brother against Anselmo's ex-husband. The ex-husband prevailed at the district court level and was awarded attorney's fees.

On April 15, 2013, the court of appeals determined that Anselmo's appeal was untimely as to merits. The court of appeals allowed the case to proceed only as to the attorney's fees award. Respondent never filed an opening brief for Anselmo. The court of appeals subsequently granted the ex-husband's motion to dismiss the appeal when Respondent failed to respond to the motion to dismiss.

Anselmo also hired Respondent to represent her in a domestic relations case. Respondent failed to respond to several communications from Anselmo. After Anselmo asked her to withdraw and to refund unearned fees, Respondent told her she had been in a hospital. Anselmo thereafter proceeded pro se.

According to a billing statement from Respondent, Anselmo had a retainer balance of $2,803.82 as of March 31, 2013. Respondent never gave Anselmo an accounting.

In this representation, Respondent violated Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness when representing a client); Colo. RPC 1.4(a)(4) (a lawyer shall promptly comply with reasonable requests for information); and Colo. RPC 1.16(d) (a lawyer shall protect a client's interests upon termination of the representation, including by returning any papers and property to which the client is entitled).

### Bedell Matter

In September 2012, Karen Bedell hired Respondent for assistance in a post-decree matter involving child support. Bedell's ex-husband thereafter appealed the child support arrearage Bedell had been awarded, and Respondent agreed to represent Bedell in the appeal. Bedell paid Respondent $3,000.00 in advance fees on October 9, 2013. Respondent did not place the fees in a trust account because she did not have one.

Respondent and Bedell exchanged communications until October 21, 2013. After that date, Bedell never heard from Respondent again, despite multiple attempts to reach her. Respondent never filed anything on Bedell's behalf in the appeal. In January 2014, Bedell wrote Respondent a letter, requesting a refund of her retainer. Respondent did not respond. Nor did Respondent respond to the People's request for investigation regarding this case. Respondent's personal use of Bedell's unearned retainer funds in this case amounted to knowing conversion of funds.

In this matter, Respondent violated Colo. RPC 1.4(a)(4); Colo. RPC 1.15(d)(1) (2008); Colo. RPC 1.16(d); Colo. RPC 8.4(c); Colo. RPC 1.5(f) (fees are not earned until a lawyer confers a benefit on the client or performs a legal service); and Colo. RPC 8.1(b) (a lawyer shall not knowingly fail to respond to a lawful demand for information from a disciplinary authority) and C.R.C.P. 251.10(a) (a lawyer shall respond to a written notice of investigation).

### OARC Matter

Beginning in October 2011, Respondent represented plaintiffs in a case in Otero County District Court. Respondent failed to send out notices on behalf of her clients as the court had ordered her to do. The judge then issued a show-cause order to Respondent and her clients, but the copies of the order mailed to Respondent were returned to the court. The judge attempted to reach Respondent without success, and Respondent's client has been unable to reach her since January 2014. The People asked Respondent to respond to a request for investigation of this matter, but Respondent did not comply.

In this matter, Respondent violated Colo. RPC 1.3; Colo. RPC 1.16(d); Colo. RPC 8.1 and C.R.C.P. 251.10(a); Colo. RPC 1.4(a)(3) (a lawyer shall keep a client reasonably informed about the status of the matter); and Colo. RPC 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal).

### Russo Matter

On February 25, 2013, a court appointed Respondent to represent Valarie Russo in

her appeal from an order terminating her parental rights. Although Respondent filed a notice of appeal and designation of record in April 2013, she never filed the petition on appeal. Russo tried to reach Respondent after an initial April 2013 meeting with no success.

In June 2013, the court of appeals issued an order directing Russo to show cause why her appeal should not be dismissed. When Respondent failed to file a response, the court of appeals dismissed the case with prejudice on July 25, 2013. The termination of Russo's parental rights became final on August 29, 2013, when the court of appeals' mandate issued. Respondent never responded to Russo's voicemail messages or emails inquiring about the status of her appeal, nor did Respondent inform her that the appeal had been dismissed.

In February 2014, Russo visited Respondent's office and was told by a receptionist that Respondent had disappeared and no one knew her location. Respondent did not respond to the People's communications about the request for investigation in this case.

In her representation of Russo, Respondent violated Colo. RPC 1.3; Colo. RPC 1.4(a)(3); Colo. RPC 1.4(a)(4); Colo. RPC 1.16(d); Colo. RPC 3.4(c); and Colo. RPC 8.1 and C.R.C.P. 251.10(a).

## IV. *SANCTIONS*

█ The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[3] In imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* Respondent violated duties she owed to her clients when she failed to communicate with them, did not pursue their cases diligently, and knowingly converted funds. Her conduct in these cases also violated duties to the court, the public, and the legal profession.

*Mental State:* The Court infers from the facts established in the complaints that Respondent knowingly committed the misconduct at issue here.

*Injury:* Respondent caused injury to her clients through her knowing conversion of funds, neglect, and other misconduct. Her former clients' testimony at the sanctions hearing highlighted some of the different types of harm she caused. Lyndsay Wilson (formerly Usseglio) testified that Respondent's inaction required her to find money to hire a new attorney, adding stress to an already-stressful situation. Wilson feels as though Respondent swindled her. Anselmo testified that Respondent wrongfully retained unearned fees at a time when Anselmo was already experiencing considerable stress, and that Respondent's inaction deprived her of the possibility to challenge the attorney's fees award. Bedell similarly testified that Respondent deprived her of funds that belonged to her. In addition, Bedell went unrepresented in her appeal because Respondent did not file the appropriate documents and Bedell could not retain another attorney while Respondent was counsel of record. Finally, Russo believes she had a valid basis for appealing her termination of rights, but she lost the opportunity to do so because of Respondent's neglect of her case. The experience has been "devastating," Russo testified. The Court determines that many of these instances qualify as serious harm or serious potential harm for purposes of the ABA *Standards*.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Under the ABA *Standards*, the presumptive sanction for Respondent's misconduct is disbarment. ABA *Standard* 4.11 provides that disbarment is typically warranted when a lawyer knowingly converts client property

---

3. See *In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

and thereby causes injury or potential injury.[4] Similarly, ABA *Standard* 4.41 calls for disbarment when a lawyer causes serious or potentially serious injury to a client by knowingly failing to perform services for a client, engaging in a pattern of neglect with respect to client matters, or abandoning the practice.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

■ Aggravating circumstances include any considerations or factors that justify an increase in the presumptive discipline to be imposed, while mitigating circumstances warrant a reduction in the severity of the sanction.[5] The Court considers evidence of the following aggravating circumstances in deciding the appropriate sanction. Respondent failed to participate in this disciplinary proceeding, and thus the Court is aware of just one mitigating factor.

*Dishonest or Selfish Motive—9.22(b):* Without question, Respondent acted with a dishonest motive when she violated Colo. RPC 8.4(c).

*Pattern of Misconduct—9.22(c):* In these matters, Respondent engaged in a pattern of neglect, financial mismanagement, and failure to communicate.

*Multiple Offenses—9.22(d):* Respondent committed more than half a dozen types of offenses: she abandoned clients, failed to establish a trust account, made misrepresentations on her attorney registration statements, failed to respond to the People's requests for investigation, did not keep clients reasonably informed about their cases, disobeyed directives from a court, and knowingly converted a client's funds.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent has been licensed since 1987.

*Indifference to Making Restitution—9.22(j):* Respondent has not returned the funds she converted from Bedell. She also did not provide a refund to Usseglio.

■ *Absence of Prior Disciplinary Record—9.32(a):* Respondent has not been disciplined in her several decades of practice. The Court considers this fact in mitigation.

### Analysis Under ABA *Standards* and Colorado Case Law

The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[6] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases." [7] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

In this case, ABA *Standards* 4.11 and 4.41 prescribe disbarment. Further, the ABA *Standards* counsel that in cases involving multiple types of attorney misconduct, the ultimate sanction should at least be consistent with the sanction for the most serious disciplinary violation.[8]

The Colorado Supreme Court likewise has held that, except where significant mitigating factors apply, disbarment is the appropriate sanction for knowing conversion of client funds in violation of Colo. RPC 8.4(c).[9]

---

4. Although Appendix 1 of the ABA *Standards* indicates that the standards applicable to violations of Colo. RPC 8.4(c) are ABA *Standards* 4.6 and 5.1, the Court determines that ABA *Standard* 4.1, "Failure to Preserve the Client's Property," is more relevant to conversion charged under Colo. RPC 8.4(c).

5. *See* ABA *Standards* 9.21 & 9.31.

6. *See In re Attorney F.*, 285 P.3d 322, 327 (Colo. 2012); *In re Fischer*, 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

7. *In re Attorney F.*, 285 P.3d at 327 (quoting *In re Rosen*, 198 P.3d 116, 121 (Colo.2008)).

8. ABA *Standards* § 2 at 7.

9. *See In re Haines*, 177 P.3d 1239, 1250 (Colo. 2008) (disbarring an attorney who knowingly misappropriated $70,000.00 belonging to her client's estate); *In re Cleland*, 2 P.3d 700, 703 (Colo.2000) (disbarring an attorney who knowingly misappropriated his client's funds, commingled funds, and misrepresented the status of his client's case); *People v. Varallo*, 913 P.2d 1, 10–11 (Colo.1996) (holding that the presumed sanction for knowing conversion of client funds

Where a lawyer's conversion of client funds is coupled with abandonment of the client, it is all the more clear that disbarment is warranted. For instance, in *People v. Kuntz*, the Colorado Supreme Court determined disbarment was appropriate when a lawyer accepted legal fees from several clients, performed little to no work on their cases, and then abandoned the clients without returning their funds.[10] Similarly, in *In re Stevenson*, a lawyer was disbarred after abandoning his client and misappropriating funds.[11] The Colorado Supreme Court noted in *Stevenson* that the lawyer's failure to participate in the disciplinary proceeding underscored the decision that disbarment was appropriate.[12]

Although mitigating factors merit close examination and may in some cases warrant a departure from the presumption of disbarment,[13] this is not such a case. To the contrary, the relative dearth of mitigating circumstances weighs in favor of disbarment. Accordingly, the Court concludes Respondent should be disbarred.

## V. *CONCLUSION*

Respondent abandoned several clients, converted funds, and failed to cooperate in this disciplinary proceeding. Through her numerous instances of misconduct, Respondent caused serious injury and serious potential injury. In order to protect the public, and given the serious nature of Respondent's misconduct, the Court disbars Respondent.

## VI. *ORDER*

The Court therefore **ORDERS**:

1. **TERRY ROSS**, attorney registration number 16588, is **DISBARRED** from the practice of law **IN THE STATE OF COLORADO**. The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment."[14]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent also **SHALL** file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d).

4. The parties **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before May 27, 2015**. No extensions of time will be granted. Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the Court.

5. The People **SHALL** file any statement requesting payment of restitution to clients or to the Attorneys' Fund for Client Protection **on or before May 27, 2015**. Any response thereto **SHALL** be filed within seven days

6. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs" **within fourteen days of the date of this order**. Respondent may file his response to the People's statement, if any, within seven days thereafter.

is disbarment, regardless of whether the lawyer intended to permanently deprive the client of those funds).

10. 942 P.2d 1206, 1208 (Colo.1997); *see also People v. Roybal*, 949 P.2d 993 (Colo.1997) (disbarring attorney for abandoning clients, failing to return unearned fees, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

11. 979 P.2d 1043, 1044–45 (Colo.1999).

12. *Id.* at 1045.

13. *In re Fischer*, 89 P.3d at 822; *In re Cleland*, 2 P.3d at 703 ("When a lawyer knowingly converts client funds, disbarment is 'virtually automatic,' at least in the absence of significant factors in mitigation.").

14. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.