**The PEOPLE of the State of Colorado, Respondent**

**v.**

**Dana Kirk NOTTINGHAM.**

**Nos. 14PDJ081, 15PDJ003.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

June 4, 2015.

---

2. The trial court concluded that Ruiz's termination was also justified under the other defenses found in the statute.

On April 10, 2015, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). Marie E. Nakagawa appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Dana Kirk Nottingham ("Respondent") did not appear. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

### OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. *SUMMARY*

Respondent neglected four separate client matters by failing to pursue his clients' cases and failing to communicate with the clients. In three of these matters, he knowingly converted client funds. By his misconduct, Respondent caused actual financial injury to each of his clients and potentially harmed their ability to advance their interests. In addition, Respondent failed to respond to the People's request for investigation of these matters. Under the circumstances, the appropriate sanction is disbarment.

### II. *PROCEDURAL HISTORY*

On April 10, 2013, in case number 12PDJ086, Respondent was suspended from the practice of law for a period of six months, all stayed subject to completion of two years

of probation with conditions, including practice monitoring. This sanction was based on Respondent's non-communication with clients, his failure to diligently complete legal work, his failure to properly safeguard unearned funds, and his delay in returning a client's file. Through that conduct, he violated Colo. RPC 1.3, 1.4(a) and (b), 1.15(a), (b), and (c), and 1.16(d).

Effective May 1, 2014, the Court revoked the stay on Respondent's suspension because he did not comply with the condition of probation requiring him to obtain a practice monitor. Respondent's license to practice law remains suspended.

The People filed a complaint in case number 14PDJ081 on September 24, 2014. Respondent failed to answer, and the Court granted the People's motion for default on December 3, 2014. On January 8, 2015, the People filed a complaint in case number 15PDJ003, and the Court consolidated the two cases on January 14, 2015. Respondent did not answer the complaint in case number 15PDJ003, and the Court entered default in that matter on March 9, 2015. Upon the entry of default, the Court deemed all facts set forth in the complaints admitted and all rule violations established by clear and convincing evidence.[1]

Respondent has steadfastly maintained that he is not subject to the jurisdiction of this Court because he attempted to resign from the practice of law by writing to the Office of Attorney Registration on August 2, 2014.[2] The office did not accept Respondent's resignation because he was subject to an order of suspension.[3] As the office explained to Respondent, C.R.C.P. 227(8) states that "An attorney may resign from the practice of law in Colorado ... *provided that no disciplinary or disability matter or order is pending against the attorney.*"[4] Through the Court's order entering default in this case, it has been deemed established that Respondent's attempt to resign his license was ineffective.[5] Because Respondent was subject to the order of suspension in case number 12PDJ086 and because the current disciplinary matter was pending,[6] Respondent was not eligible to voluntarily resign his law license in August 2014, he is still considered a member of the bar, and he therefore must answer for the misconduct in this case.[7]

At the sanctions hearing on April 10, 2015, the Court considered the testimony of Scott Kerley and Luis Salas–Sanchez, and admitted exhibits 1–3 and 6.

On April 22, 2015, the People filed a "Motion for Order of Restitution," requesting awards of restitution in the amount of $1,820.00 to Salas–Sanchez and $3,000.00 to Kerley. Respondent filed no response.

## III.  *ESTABLISHED FACTS AND RULE VIOLATIONS*

The Court hereby adopts and incorporates by reference the factual background of this consolidated case, as fully detailed in the admitted complaints. Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on October 16, 2000, under attorney registration number 31944. He is thus subject to the

---

1. *See* C.R.C.P. 251.15(b); *People v. Richards,* 748 P.2d 341, 346 (Colo.1987).

2. Ex. 6.

3. Ex. 3.

4. (Emphasis added).

5. *See* Compl. ¶ 41 (case number 15PDJ003) (alleging that Respondent attempted to resign his license and that the Office of Attorney Registration did not accept the resignation because his resignation was precluded by rule).

6. Ex. 1; *see also* Compl. ¶ 31 (case number 14PDJ081) (indicating that Respondent met with

the People's investigators regarding the Arellano matter sometime on or before December 23, 2013).

7. *See also In re C de Baca,* 11 P.3d 426, 430 (Colo.2000) (stating that "a lawyer may be disciplined for engaging in conduct violating the rules of the profession even though the lawyer was suspended at the time of the misconduct" and that "a lawyer who is suspended is ... still a lawyer and is still a member of the bar"); *cf. In re Bass,* 307 P.3d 1052, 1055 (Colo.2013) (holding that an attorney remains subject to an order of probation even after the expiration of the prescribed period of probation until an order is entered confirming successful completion of probationary conditions).

Court's jurisdiction in these disciplinary proceedings.[8]

### Arellano Matter

On August 22, 2012, Christian Arellano hired Respondent to represent him in a deferred action immigration matter. On that same day, Respondent and Arellano executed a written representation agreement. The agreement identified Respondent's scope of work as "Deferred Action For Childhood Arrivals—Application And Accompanying Work Authorization Appliction [sic]. Collection Of All Necessary Documentation, Preparation And Submission Of Applications And All Relevant Follow–Up Related To The Applications." Respondent charged Arellano a legal fee of $1,250.00, as well as $465.00 for filing fees, $50.00 for translations, and $20.00 for additional fees and costs.

Arellano paid Respondent $200.00 on August 22, 2012; $700.00 on December 13, 2012; and $815.00 on January 25, 2013. Respondent did not deposit any of these funds into a trust account.

Arellano also gave Respondent an original copy of his birth certificate, school records, and tax returns. Arellano telephoned United States Citizenship and Immigration Services ("USCIS") to check on the status of his case and discovered that no documents had been filed on his behalf. On April 30, 2013, Arellano emailed Respondent asking about the status of his case and requesting the return of his birth certificate so that he could obtain a passport. Respondent replied that same day, stating, "Christian—I have a few files that are taking time. I will check and get back to you. In the meantime, I can email you your birth certificate, or you can pick if [sic] up. Let me know which you would prefer."

Arellano emailed Respondent on May 1, 2013, letting him know that USCIS had no record of him, even though it had been three months since he had paid Respondent in full. He asked Respondent why his money order had been cashed yet the USCIS had no record of documentation filed on his behalf.

He asked Respondent to quickly let him know what was happening with his case and renewed his request that Respondent mail him his birth certificate. Respondent did not respond.

On May 6, 2013, Arellano again emailed Respondent inquiring about his case. He informed Respondent that he had called USCIS and that they again had told him they had no record of any documents filed on his behalf, nor had they received his $465.00 money order. Respondent emailed Arellano the next day, saying that he would call him. Arellano provided Respondent with his brother's phone number, where he could be reached. But Respondent never called Arellano or his brother, nor did he respond to the questions Arellano raised about the progress of his case. On May 10, 2013, Arellano once again emailed Respondent, stating that documents still had not been filed on his behalf with USCIS. Yet again, Respondent failed to respond to Arellano's email.

On May 23, 2013, Arellano sent Respondent a letter terminating his representation and asking for his file and for a refund of the unused retainer fee and filing fee. Respondent did not immediately return the funds or Arellano's file. Respondent sent Arellano a refund check of $1,715.00 on August 5, 2013, written from his operating account. The check was returned for insufficient funds. It was only after meeting with the People on December 23, 2013, that Respondent gave Arellano a cashier's check for $1,715.00. There is no evidence that Respondent safeguarded Arellano's funds.

Through this conduct, Respondent violated six Rules of Professional Conduct:

- Respondent violated Colo. RPC 1.3(c) (a lawyer shall act with reasonable diligence and promptness when representing a client) by failing to reasonably pursue Arellano's immigration matter. Respondent did virtually nothing to advance Arellano's case, even when prompted numerous times by his client to do so.

---

**8.** *See* C.R.C.P. 251.1(b). Respondent's registered business address is 5900 E. Colfax Avenue, Denver, Colorado 80220.

When he neglected to keep Arellano reasonably informed about the status of his immigration matter and of the funds he had paid, Respondent acted in violation of Colo. RPC 1.4(a)(3) (a lawyer shall keep a client reasonably informed about the status of a matter).

When Respondent did not maintain Arellano's unearned retainer fees and filing fees in a trust account, he violated Colo. RPC 1.5(f) (fees are not earned until a lawyer confers a benefit on the client or performs a legal service).

Respondent disregarded Colo. RPC 1.15(a) (2008) (a lawyer shall hold client property separate from the lawyer's own property) when he failed to safeguard Arellano's unearned legal fees and filing fees.

By failing to return Arellano's file and fees upon termination of the representation, Respondent violated Colo. RPC 1.16(d) (2008) (a lawyer shall protect a client's interests upon termination of the representation).

Finally, Respondent violated Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) when he knowingly converted Arellano's unearned retainer and filing fees by exercising unauthorized dominion and control over those funds.

### Salas–Sanchez Matter

On June 5, 2012, Luis Salas–Sanchez retained Respondent to assist him with an immigration matter. That same day, the parties executed a written "Representation Agreement." In this agreement, the scope of Respondent's legal work was identified as "One-step application—I–130 follow up, I–485, attend interview." Respondent charged Salas–Sanchez $2,000.00 for this work, with $300.00 to be paid up front and $300.00 to be paid monthly thereafter. Respondent also charged Salas–Sanchez $1,070.00 for filing fees. Salas–Sanchez paid Respondent $1,370.00 on June 5, 2012; $150.00 on July 9, 2012; $150.00 on July 19, 2012; $200.00 on August 14, 2012; $300.00 on September 10, 2012; and $150.00 on October 31, 2012. At Respondent's request, Salas–Sanchez gave Respondent paperwork related to his medical history.

Respondent cashed the money orders Salas–Sanchez gave him for filing fees. He did not hold Salas–Sanchez's retainer or filing fees in his trust account. Respondent did not complete the legal work described in the retainer agreement. From October 31, 2012, to July 16, 2013, Salas–Sanchez made repeated attempts to contact Respondent with no success.

Ultimately, on July 16, 2013, Salas–Sanchez sued Respondent in Denver County Small Claims Court for the refund of his fees and file. A trial was set for August 27, 2013. Respondent did not answer the complaint, but the parties reached a settlement before the trial. The settlement agreement required Respondent to return $1,590.00 to Salas–Sanchez and return his file by September 3, 2013. The court accepted the parties' stipulation and set the matter for review on September 4. Respondent did not abide by the agreement, however, and on September 4, the court entered judgment against Respondent for $1,590.00 and ordered him to return Salas–Sanchez's file by September 11, 2013. The court authorized Salas–Sanchez to use the services of the Arapahoe County Sheriff to retrieve his documents if Respondent failed to comply with the court's order.

Salas–Sanchez told the People that Respondent finally paid him $500.00, but the court's register indicates that he still owes Salas–Sanchez $1,590.00. Respondent never returned Salas–Sanchez's file.

Through this conduct, Respondent violated seven Rules of Professional Conduct:

Respondent violated Colo. RPC 1.3(c) when he failed to perform the legal services he agreed to perform for Salas–Sanchez.

When he failed to advise Salas–Sanchez of the status of his immigration matter, Respondent violated Colo. RPC 1.4(a)(3).

Respondent violated Colo. RPC 1.5(f) by failing to keep unearned retainer fees and filing fees in a trust account.

Respondent breached Colo. RPC 1.15(a) (2008) when he failed to safeguard un-

earned legal fees and filing fees belonging to Salas–Sanchez in a separate trust account.

- By knowingly disobeying the order of the Denver County Small Claims Court, Respondent transgressed Colo. RPC 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal).

- Respondent violated Colo. RPC 1.16(d) (2008) by failing to return Salas–Sanchez's file and funds when Salas–Sanchez discharged him.

- Last, Respondent violated Colo. RPC 8.4(c) when he knowingly converted unearned fees and filing fees belonging to Salas–Sanchez.

### Kerley Matter

In 2010, Scott Kerley used the legal services of David R. Calvert, who was a licensed attorney at that time. They became friends and business partners. When Calvert was disbarred on June 21, 2012, he did not tell Kerley. In 2013, Kerley asked Calvert to help him settle his credit card debt, and Calvert agreed. Kerley believed Calvert was a practicing attorney. Kerley paid Calvert a flat fee of $2,500.00.

Calvert suggested that Respondent represent Kerley so that Respondent could work off debts he owed Calvert. Kerley agreed. There was no written fee agreement memorializing this agreement. On September 24, 2013, Kerley gave Calvert a check for $20,000.00; it was made out to Nottingham Law and was to be used for paying negotiated amounts to creditors. Kerley did not authorize Respondent or anyone else to use the $20,000.00 for any other purpose. Calvert gave this check to Respondent in late September 2013.

Respondent deposited Kerley's $20,000.00 check into a newly opened COLTAF account on September 26, 2013. Between September 27, 2013, and October 15, 2013, Respondent made four online transfers totaling $3,000.00 from his COLTAF account into his operating account. Respondent treated these funds as his own and consumed them without Kerley's permission. On October 21, 2013, a check for $2,500.00 cleared Respondent's COLTAF account; this represented a debt incurred by Kerley.

In November 2013, Kerley contacted Calvert to find out if there had been any progress on resolving his debt. Calvert told Kerley that Respondent "skipped out of his office owing him money." Calvert provided Kerley with Respondent's telephone number. Kerley called Respondent several times in December 2013, but Respondent did not return the calls. In January 2014, Kerley went to Respondent's office and left a message for him, but again Respondent did not respond. On January 14, 2014, Kerley sent a certified letter to Respondent terminating his representation and asking him to advise Kerley's creditors that Respondent no longer represented him. Kerley also requested an accounting of his $20,000.00 and a full refund within ten days.

As of January 14, 2014, the balance in Respondent's COLTAF account was $6,767.33. But at that time, Respondent had settled only one debt of $2,500.00 for Kerley. Respondent should have had $17,500.00 out of the $20,000.00 he received for the purpose of resolving Kerley's debt. Thus, instead of safeguarding these funds, Respondent had converted $10,732.67 for his own benefit by that time.

On January 26, 2014, Kerley and Respondent met. Respondent gave Kerley a signed statement promising to return $14,500.00 by February 3, 2014, and another $3,000.00 by February 15, 2014. But Respondent in fact converted an additional $500.00 from Kerley on January 29, 2014. On February 6, 2014, Respondent made a cash deposit of $8,300.00 from an unknown source into his COLTAF account, bringing the balance to $14,567.33. The same day, Respondent met with Kerley and gave him a check from his COLTAF account for $14,500.00 as a "Refund of settlement money." At this meeting, Respondent also gave Kerley a signed statement noting that the following items were due to Kerley by February 15, 2014: a full accounting, copies of correspondence from Respondent to Kerley's creditors disclosing that Respondent no longer represented Kerley, and the $3,000.00 balance. But after this meeting, Respondent ceased communicating with Ker-

ley. Respondent never paid Kerley his remaining balance of $3,000.00.

Respondent did not respond to the request for investigation that Kerley filed with the People. On August 2, 2014, Respondent attempted to resign his law license. Because C.R.C.P. 227(A)(8) precludes an attorney from resigning while disciplinary matters are pending, the People declined to accept Respondent's resignation.

In the Kerley matter, Respondent violated eight Rules of Professional Conduct:

- Respondent violated Colo. RPC 1.3 when he did not diligently work to resolve Kerley's debts.
- Respondent violated Colo. RPC 1.4(a)(3) by failing to respond to Kerley's messages.
- When he failed to respond to Kerley's messages, neglected to give Kerley an accounting, and failed to inform Kerley's debtors that he no longer represented Kerley, Respondent violated Colo. RPC 1.4(a)(4) (a lawyer shall promptly comply with reasonable requests for information).
- Respondent violated Colo. RPC 1.15(a) (2008) when he failed to safeguard Kerley's funds.
- Respondent violated Colo. RPC 1.15(b) (2008) (a lawyer shall promptly, upon a client's request, provide a full accounting of funds held by the lawyer) when he disregarded Kerley's request for an accounting.
- By failing to return all of Kerley's funds and failing to contact Kerley's creditors, Respondent violated Colo. RPC 1.16(d) (2008).
- Respondent violated Colo. RPC 8.1(b) (a lawyer shall not knowingly fail to respond to a lawful demand for information in a disciplinary matter) and C.R.C.P. 251.10(a) (a lawyer shall respond to allegations in a disciplinary investigation) when he disregarded Kerley's request for investigation and the People's attempts to obtain information from him.
- Finally, Respondent knowingly converted Kerley's funds in violation of Colo. RPC 8.4(c).

**Sanders Matter**

In September 2013, Loretta Sanders signed a contingency fee agreement to retain the Nottingham Law Firm in her personal injury case. On November 4, 2013, Respondent sent Sanders a letter telling her that he was moving his office. He provided a P.O. Box and two telephone numbers where he could be reached. After Sanders received this letter, she made several unsuccessful attempts to contact Respondent.

In February 2014, Respondent called Sanders, who expressed displeasure with his lack of communication. Respondent told her he needed time to organize her file before returning it. Sanders sent him a letter on February 19, 2014, terminating his representation and asking that he return her file. Respondent did not comply or respond. Sanders later hired another lawyer to handle her personal injury case.

In the Sanders matter, Respondent violated five Rules of Professional Conduct:

- Respondent violated Colo. RPC 1.3 when he did not take any action on Sanders's behalf for over five months.
- Respondent violated Colo. RPC 1.4(a)(3) by failing to answer Sanders's calls for several months.
- Respondent violated Colo. RPC 1.4(a)(4) when he ignored Sanders's numerous attempts to contact him and refused to return her file.
- When he failed to return Sanders's file upon her request, Respondent also violated Colo. RPC 1.16(d) (2008).
- Respondent failed to respond to the People's requests for investigation in violation of Colo. RPC 8.1(b) and C.R.C.P. 251.10(a).

## IV.  SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the im-

position of sanctions for lawyer misconduct.[9] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* Respondent violated duties he owed to his clients, including failing to diligently pursue their cases, not reasonably communicating with clients, neglecting to safeguard unearned client fees, and converting client funds. He also disregarded his obligations as a professional by failing to protect his clients' interests upon termination of representation and not responding to the disciplinary investigation. Finally, he violated his duty to the legal system by disregarding a court order.

*Mental State:* The complaint makes plain that Respondent engaged in this misconduct with a knowing state of mind.

*Injury:* In addition to undermining the public's perception of the legal profession, Respondent caused actual injury to his clients. Respondent's clients relied upon him to perform services, and when he did not do so they experienced unwarranted emotional stress. Kerley, for instance, testified that Respondent's actions prevented him from paying off judgments and refinancing his house. Salas–Sanchez testified that Respondent's conduct caused him significant emotional, as well as financial, harm. In addition to the debt of $1,590.00 mentioned above, Salas–Sanchez said that he paid between $600.00 and $800.00 for medical tests at Respondent's direction, but Respondent did not timely submit the test results, so the results expired.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Disbarment is the presumptive sanction for Respondent's misconduct in this case. ABA *Standard* 4.41 states that disbarment is generally appropriate when a lawyer knowingly converts client property, causing the client injury or potential injury. In addition, ABA *Standard* 8.1(b) provides that disbarment is normally warranted when a lawyer has previously been suspended for similar misconduct and knowingly engages in further acts of misconduct that harm the client, the public, the legal system, or the profession. The Court also takes into account that in cases involving multiple types of attorney misconduct, the ABA *Standards* recommend that the ultimate sanction should be at least consistent with, and generally greater than, the sanction for the most serious disciplinary violation.[10]

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[11] The Court considers evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction.

Six aggravating factors are present here. First, Respondent has prior discipline.[12] Second, Respondent had a dishonest and selfish motive in converting client money.[13] Third, Respondent engaged in a pattern of neglect, lack of communication, and failure to return client property.[14] Fourth, Respondent engaged in multiple types of misconduct in all four client matters.[15] Fifth, Respondent had substantial experience in the practice of law at the time he engaged in this

---

9. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

10. ABA *Standards* § II at 7.

11. *See* ABA *Standards* 9.21 & 9.31.

12. ABA *Standard* 9.22(a).

13. ABA *Standard* 9.22(b).

14. ABA *Standard* 9.22(c).

15. ABA *Standard* 9.22(d).

misconduct.[16] Sixth, Respondent has demonstrated indifference to paying restitution to his clients.[17] Because Respondent did not participate in the disciplinary proceedings, the Court is unaware of any mitigating factors.

### Analysis Under ABA *Standards* and Colorado Case Law

■ The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[18] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[19] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

Colorado case law identifies disbarment as the proper sanction when a lawyer knowingly converts client funds, absent significant mitigation.[20] Here, given the substantial number of aggravating factors and lack of mitigating factors, the relevant Colorado Supreme Court case law, and Respondent's failure to participate in this proceeding, the presumptive sanction of disbarment is clearly warranted.

### V. *CONCLUSION*

Respondent violated his duties to his clients, to the courts, and to the legal profession by neglecting his clients' cases, converting funds, disobeying a court order, and other misconduct. Given the presumptive sanction and the significant aggravating factors here, Respondent must be disbarred.

### VI. *ORDER*

The Court therefore **ORDERS:**

1. **DANA KIRK NOTTINGHAM,** attorney registration number 31944, is **DISBARRED.** The DISBARMENT **SHALL** take effect only upon issuance of an "Order and Notice of Disbarment."[21]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a–c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent also **SHALL** file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.

4. The parties **SHALL** file any post-hearing motion or application for stay pending appeal **on or before June 18, 2015.** No extensions of time will be granted. Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the Court.

5. The People **SHALL** file a "Statement of Costs" **on or before June 18, 2015.** Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the Court.

6. Respondent **SHALL** pay restitution to Salas–Sanchez in the amount of

---

16. ABA *Standard* 9.22(i).

17. ABA *Standard* 9.22(j).

18. *See In re Attorney F.*, 285 P.3d 322, 327 (Colo. 2012); *In re Fischer*, 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

19. *In re Attorney F.*, 285 P.3d at 327 (quoting *In re Rosen*, 198 P.3d 116, 121 (Colo.2008)).

20. *In re Haines*, 177 P.3d 1239, 1250 (Colo. 2008); *In re Cleland*, 2 P.3d 700, 703 (Colo. 2000).

21. In general, an order and notice of disbarment will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

$1,820.00 and to Kerley in the amount of $3,000.00 **on or before July 2, 2015.**